## SULLIVAN *v.* BURNETT.

1. By the laws of Missouri in force in 1866 an alien was capable of taking by descent lands in that State, and of holding and alienating them, if he either resided in the United States, and, by taking the oath prescribed by the act of Congress, had declared his intention to become a citizen, or resided in Missouri, although the ancestor through whom he claimed was, at the time the descent was cast, an alien, who, by reason of his non-residence, was incapable of inheriting.

2. The statute of 1855, which gave to a non-resident alien the right within a limited period to sell and convey the lands whereof the intestate died seized, applied only where at the time of his death there was no person capable of taking them by descent.

3 The statute of March 30, 1872 *(infra,* p. 336), has no retrospective operation.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

This action, under the local law equivalent to an action of ejectment, involves the title to certain real estate in the city of St. Louis, of which Edward Sullivan, a naturalized citizen of the United States, who died intestate in the year 1866, was seized in fee at the time of his death.

Both parties claimed under him. The court below specially found that Emily Sullivan, one of the plaintiffs, was his sister, and that Jeremiah Sullivan, the other plaintiff, was a son of his deceased brother.

It was admitted on the trial that the plaintiffs were then, and always had been, non-resident aliens, and that neither had made a declaration of intention to become a citizen of the United States.

The court below held that under the laws of Missouri in force at the death of Edward Sullivan, the plaintiffs were incapable of acquiring the real estate in dispute, especially as there were several aliens resident in this country who had declared their intention to become citizens, and also a resident alien in Missouri, to whom the real estate would descend subject to the limitations mentioned in those laws.

Under the foregoing view of the case, the court found it unnecessary to pass upon the other facts and questions of law presented by the defendants.

Judgment was rendered for the defendants, and the plaintiffs sued out this writ.

The remaining facts are stated in the opinion of the court, and the statutes therein mentioned are as follows: —

" GENERAL STATUTES OF MISSOURI, 1865.   TITLE XXVIII.
CHAPTER 110.

" SECT. 1. All aliens residing in the United States, who shall have made a declaration of their intention to become citizens of the United States, by taking the oath required by law, and all aliens, residents of this State, shall be capable of acquiring real estate in this State, by descent or purchase, and of holding and alienating the same, and shall incur the like duties and liabilities in relation thereto, as if they were citizens of the United States.

" SECT. 2. It shall be lawful for every alien, who, except for his alienage, would be capable of acquiring real estate by devise or descent from any person thereafter dying, capable of holding, at the time of his death, real estate in this State, to sell and convey, in the manner provided by law for the conveyance of real estate, any real estate which he may acquire by virtue of this section, to any other person capable of holding real estate by virtue of the laws of this State; and such sale and conveyance, when executed and delivered in the manner provided, shall have the effect to pass all the title to any real estate which such alien may have acquired to the same, by descent or devise.

" SECT. 3. All such sales and conveyances shall be null and void, unless made in good faith within three years next after the final settlement of the estate of the ancestor or devisor: *Provided*, that if such real estate be in litigation between such alien and any other person, then such real estate, or so much thereof as shall have been in litigation, shall be sold and conveyed within three years after the termination of such litigation.

" CHAPTER 129, id.

" OF DESCENTS AND DISTRIBUTIONS.

" SECT. 1. When any person having title to any real estate of inheritance, or personal estate undisposed of, or otherwise limited by marriage settlement, shall die intestate as to such estate, it shall descend and be distributed in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower,

in the following course: First, to his children or their descendants in equal parts; second, if there be no children or their descendants, then to his father, mother, brothers, and sisters and their descendants in equal parts; third, if there be no children or their descendants, father, mother, brother, or sister, nor their descendants, then to the husband or wife; if there be no husband or wife, then to the grandfather, grandmother, uncles and aunts and their descendants, in equal parts; fourth, if there be no children or their descendants, father, mother, brother, sister, or their descendants, husband or wife, grandfather, grandmother, uncles, aunts, nor their descendants, then to the great-grandfathers, great-grandmothers and their descendants in equal parts; and so on in other cases without end, passing to the nearest lineal ancestors and their children and their descendants in equal parts."

"SECT. 8. In making title by descent it shall be no bar to a demandant that any ancestor through whom he derives his descent from the intestate is, or has been, an alien.

"ACT OF MARCH 30, 1872.

"SECT. 1. Aliens shall be capable of acquiring, by purchase, devise, or descent, real estate in this State, and of holding, devising, or alienating the same, and shall incur the like duties and liabilities in relation thereto as if they were citizens of the United States, and residents of this State.

"SECT. 2. Any female born in the United States, owning real estate or any interest therein in this State, who shall marry an alien and reside in a foreign country, may, at any time, notwithstanding such marriage or residence, convey such real estate, or any interest therein, by deed, or may at any time devise the same by last will: *Provided,* the same be done in either case in conformity with the general laws of this State concerning the conveyance of real estate by deed and the making of wills.

"SECT. 3. Chapter one hundred and ten of title twenty-eight of the General Statutes of Missouri, being chapter five of Wagner's Missouri Statutes, and an act entitled 'An Act to amend chapter one hundred and ten of title twenty-eight of the General Statutes concerning real property and its alienation,' approved March 13, 1867, are hereby repealed.

"SECT. 4. This act shall take effect on the fourth day of March, in the year eighteen hundred and seventy-two."

*Mr. Leroy B. Valliant* and *Mr. Willoughby N. Smith* for the plaintiffs in error.

*Mr. Gustavus A. Finkelnburg* for the defendants in error. ·

MR. JUSTICE HARLAN delivered the opinion of the court.

At the death of the intestate, as well as at the commencement of this action, the plaintiffs — his sister and the son of his deceased brother — were residents of Ireland and subjects of the United Kingdom of Great Britain and Ireland. · The defendants, it is sufficient to say, hold whatever title passed to a female lunatic, foreign born and a first cousin of the intestate, residing, at his death, in Maryland, but who, so far as the record discloses, never made a declaration of her intention to become a citizen of the United States; also. whatever title passed to the children of Annie Murta and Mary Murta, foreign-born first cousins, who, like the plaintiffs, resided, at his death, in Ireland, and were subjects of the United Kingdom of Great Britain and Ireland. But their children, also foreign born, were, at his death, naturalized citizens of the United States, one of them a resident of the State of Missouri. ·

The controlling question relates to the claim of the plaintiffs to an interest in the property in controversy.

The statutes to which, as bearing upon the case, our attention has been called, are chapter 110 of the Revised Statutes of Missouri, 1865, sections 1 and 8 of chapter 129 of the same revision, and an act of the General Assembly of that State, approved March 30, 1872. The first section of chapter 110 is a reproduction of statutory provisions which had been in force from a very early period after the admission of Missouri into · the Union. Rev. Stat. Mo., 1825, p. 126; id. 1835, p. 66; Rev. Code of Mo., 1845, p. 113. It conferred upon two classes of aliens the same capacity of acquiring by descent or purchase real estate in Missouri, and of holding and alienating it, as is enjoyed by citizens of the United States, — those residing in this country who had made a declaration of intention to become citizens of the United States, by taking the required oath, and those, whether they had made such declaration or not, who resided in that State. · Aliens not belonging to one

or the other of those classes were left subject to the operation of the common-law rule — recognized as in force in Missouri — that an alien, for the want of inheritable blood, could not take land by descent. *Wacker* v. *Wacker*, 26 Mo. 426; 2 Bl. Com., 249; *Orr* v. *Hodgson*, 4 Wheat. 453. The second and third sections, as to their substantial provisions, are brought forward from an act approved Feb. 22, 1855, which declares it to be " lawful for every alien who, except for his alienage, would be entitled to any real estate by devise or inheritance from any person hereafter dying, capable at the time of his death of holding real estate situate in this State, to legally sell, for his own use, and convey the title thereof to any person capable of holding real estate situate within this State: *Provided*, he make such sale and conveyance within three years next after the death of him from whom he shall claim such devise or inheritance." When the minor is an alien, his guardian is authorized to make such sale and conveyance. Sess. Laws Mo., 1855, p. 4.

It is quite clear that, upon the death of Edward Sullivan, neither of the plaintiffs took by descent any interest in his real estate, for the reason suggested by the very words of the statute, and fortified by the policy which dictated its enactment, that they were and are alien non-residents of the United States. This construction must be adopted, unless the object of the act of 1855 was, for purposes of descent, to obliterate all distinction between aliens residing in, and those residing out of, the United States. But no such interpretation is admissible, especially in view of the fact that the statute of 1855, upon this general subject, as well as that enacted previously thereto, was embodied in the same chapter of the general revision of 1865. The section declaring it lawful for an alien to sell and convey, within a prescribed time, to one capable of holding, real estate which, except for his alienage, he would have been capable of acquiring by devise or descent, has reference to cases not embraced by the first section of chapter 110; that is, to cases in which the property would vest at once in the State for the want of some person who could, at common law or under the statute, inherit. Aliens of the class described in the first section of chapter 110 could not

inherit at common law, but by statute they were permitted to take by descent or purchase, holding, or selling and conveying. as it suited their convenience to do the one or the other. In all those respects, aliens embraced by that section were placed upon the same footing of equality with citizens of the United States. But to an alien who did not have capacity to inherit by virtue of residence in Missouri, or of residence in the United States accompanied by a formal declaration, under oath, of intention to become a citizen, the right was given by the act of 1855, continued and enlarged in section 2 of chapter 110 (not to inherit and hold, as a native or naturalized citizen could, but), to take and sell and convey to one who could hold. Until the law of 1855 was enacted, the right of the State to take the real estate of one who left no person in existence capable of acquiring it, by descent, accrued immediately upon the death of the owner. Impelled by a sense of justice, or to meet the hardships of cases likely to arise in a new State receiving large accessions to its population from Europe, Missouri, as a partial waiver or suspension of its rights, and for no other purpose, declared by the act of 1855 that an alien who did not reside in Missouri, or in this country with an intention to become a citizen of the United States, and who could not, therefore, inherit, might, within a limited period, sell and convey to one who could take and hold.

That statute, plainly, had no reference to those aliens upon whom had already been conferred, by statute, the capacity to inherit and hold, or to sell and convey, in the same manner as citizens of the United States.

But the contention of counsel for the plaintiffs is, that the children of Annie and Mary Murta could not take this property, nor any interest in it, because their alien non-resident mothers, through whom they traced relationship to the deceased, were alive at his death; and since the parents were incapable of taking, for the reasons we have given, their children could not take. Upon the basis of that conclusion, counsel advance to the further proposition, that, if neither the plaintiffs nor the Murta children could take by descent, the property upon the death of the intestate escheated to the State, and the right of the plaintiffs to take as the nearest of kin was subsequently rec-

ognized and established by the first section of the act of March 30, 1872.

Although that statute was enacted within three years after the final settlement of Edward Sullivan's estate, and although its object was, undoubtedly, to remove the disabilities of aliens of every class, whether resident or non-resident, to acquire real estate in Missouri by purchase, descent, or devise, we are of opinion that neither of the propositions just stated can be successfully maintained. The Murta children, we have seen, were naturalized citizens of the United States, one of them being also a resident of Missouri. At the time descent was cast they were the nearest of kin of the class of aliens who, by the first section of chapter 110, were capable of acquiring real estate in Missouri by descent or purchase. Their right to take by descent was not, as we think, affected by the fact that their respective mothers were, when the intestate died, alive, and alien non-residents of this country, incapable themselves of inheriting the estate. The eighth section of the chapter (129) on descents and distributions declares that " in making title by descent it shall be no bar to a demandant that any ancestor through whom he derives his descent from the estate is or has been an alien." This language would seem to embrace as well the case of one whose alien progenitor, through whom is traced relationship to the intestate, was living when descent was cast, as the case where such progenitor was then dead. This view is controverted by the plaintiffs, on the authority of *McCreery's Lessee* v. *Somerville* (9 Wheat. 354), where this court had occasion to determine the meaning of the statute of 11 & 12 William III. c. 6, which, it is claimed, is, upon the present point, identical with the foregoing section in the Missouri statute of descents and distribution. It was there ruled that the English statute (in force in Maryland, from which State the case came) removed the common-law disability to claim title through an alien ancestor, but did not apply to a living alien ancestor, so as to create a title by heirship, where none would exist by the common law if the ancestor were a natural-born subject. We remark, in reference to that case, that the English statute is not accurately quoted in the opinion of the court, as an examination of 10 British Stat. at Large, 319

(Pickering's ed.), will show.   But without deciding that the words omitted ought to have produced a judgment different from that rendered, we are of opinion that the present case is not governed by *McCreery's Lessee* v. *Somerville*.   The statute of Missouri which permits the demandant to inherit from an intestate, notwithstanding his ancestor, through whom he derives his descent, is or has been an alien, must be interpreted with reference as well to other provisions conferring upon aliens the capacity to inherit real estate, as to the public policy which manifestly induced such legislation.   These provisions, in terms, make an alien resident in Missouri, or an alien resident elsewhere in this country, intending to become a citizen, capable of inheriting real estate by descent or purchase.   In making title by descent it may be that his ancestor is or was an alien, without inheritable blood, either at common law or by statute.   That fact would ordinarily constitute an insuperable difficulty in the way of his taking or holding the estate.   But the statute elsewhere interposes in his behalf, and says that he shall not be barred in tracing his descent from the intestate, by reason of the fact that *any* ancestor either *is* or has been an alien, — language broad enough, as we have suggested, to include a living as well as a dead progenitor.

Unless the statute be so construed, it would result that, while an alien residing in Missouri, having no purpose to become a citizen of the United States, could, under the then existing law, if the nearest of kin, inherit and hold as fully as if he were a citizen of the United States, a naturalized citizen, actually residing in Missouri, would be barred from taking and holding by the fact — wholly unimportant in view of the policy of the State — that his parent or ancestor, through whom he must trace relationship to the intestate, was, when descent was cast, alive and an alien non-resident of the country, or a resident of the United States, outside of Missouri, with no intention to become a citizen.   We are not satisfied that such an interpretation of the statute would be consistent with the intention of the legislature, and we therefore reject it as unsound.

But should we be in error in this construction, there is

another ground upon which the claim of the plaintiffs must be denied.

We have ruled that, when descent was cast, neither of the plaintiffs had capacity to inherit, and if, as contended, the Murta children were also barred by the fact that their respec- tive alien mothers were then living, it would result, as counsel concede, that the property escheated to the State immediately upon the death of Edward Sullivan. This upon the ground that the legal title could not be in abeyance. 2 Fearne, 20. In that contingency, neither the plaintiffs nor the defendants could claim any interest in the property, by virtue of the act of 1872. The Constitution of Missouri forbids the General Assem- bly from passing any law retrospective in its operation. Art. 1, sect. 28. And if that inhibition does not prevent the State from releasing, under the authority of a statute and for the benefit of individuals, any right of property it may have acquired by escheat, it is sufficient to say that the act of 1872 contains no language clearly indicating an intention to make it retrospective. It is, consequently, applicable alone to future acquisitions by aliens of real estate in Missouri.

*Judgment affirmed.*