PILLA and another *v.* GERMAN SCHOOL ASS'N and another.[1]

*(Circuit Court, E. D. Missouri.   April 24, 1885.)*

1. DESCENT AND DISTRIBUTION—ALIENAGE.
   The law existing at the time of descent cast, governs the right of aliens to inherit realty.
2. SAME.
   Under the Missouri statutes existing in 1860, aliens could not inherit realty.
3. EQUITY PRACTICE IN REMOVED CASE.
   Where a suit, embracing both an equitable and legal cause of action, is instituted in a state court and removed to this court, and the equitable cause of action stated is held bad on demurrer, the bill will be dismissed, and the complainant left to pursue his remedy at law.

In Equity.   Demurrer to bill.

*Louis Gottschalk,* for complainants.   *Henry Hitchcock* and *Hugo Muench,* for defendants.

TREAT, J., (*orally.*)   This case, instituted in the circuit court of the city of St. Louis and removed here, involves some questions which have been presented in part only to the court.

The plaintiffs in the suit are a Mrs. Maria Pilla and Maria Parazolt, her husband joining, residents of France, daughters, as they claim, of one Gabriel Andre, who died in this country in November, 1860, leaving a will.   In that will, so far as its provisions are stated, the decedent recited that he had a wife in France, from whom he had been separated; that a son was born a great many years antecedent to the will, who died at the age of 11 months.   There were two supposed daughters, to one of whom he left the sum of one dollar, averring, as

---

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

the reason for so doing, that she was not his child, but illegitimate. The bill itself does not separate the two daughters who are plaintiffs therein as to which one had been cut off with a dollar, but avers that they are the legitimate daughters, both of them, of the decedent, and they sue jointly for their portions of the estate.   It is obvious that if he chose to cut off one of the two, whether legitimate or illegitimate, and made a disposition of his property as to one only, the unnamed one would not lose her interest in the estate; but which was the one? He did not name her.   There are two.   One has been disposed of by the will; but which one?   Without commenting any further in regard to that, it must suffice, for the purposes of this case, that, whether one or the other was the daughter unnamed and unprovided for, the court would not know which was the one until further investigation.   That would present a controversy among themselves.   How could the forms of that litigation arise?   Concerning that I have nothing to say, because there is a question that disposes of the case, and which underlies the whole matter.

The case of *Sullivan* v. *Burnett*, tried in this court, and affirmed by the supreme court of the United States, (105 U. S. 334,) and the *Case of De Franca*, 21 FED. REP. 774, decided at the last term of this court by Justice MILLER, are conclusive, so far as the realty is concerned: namely, that at the time of descent cast, November, 1860, the rights of the parties were fixed according to the statutes then existing with regard to aliens.   It is a matter of astonishment to me, however, that while I tried the case of *Sullivan* v. *Burnett*, and the act of February 18, 1855, was before me, and also before the supreme court when it passed upon that case and affirmed the judgment of this court, yet the act of November, 1855, was not referred to in that case, and not referred to in this case.   If Wagner's Revision of 1870 is a correct revision, I find, without going back to the original statutes, that there was a strange omission on the part of this court, and consequently on the part of the supreme court of the United States, to notice that act.   Had it been noticed, it would not, however, have affected the result.   The act of February, 1855, so far changed the old law that an alien could not inherit realty; as to permit the alien to take and sell within three years after the death of the ancestor.   Subsequently, a statute was passed, and that is the act to which I refer, and to which no allusion is made, either by this court or the supreme court, in the determination of that case, to-wit, the act of November, 1855, concerning the time within which they might dispose of the property, which, but for alienage, would descend in fee to them, limiting the power to sell it to three years after administration had.   That was the condition at time of descent cast.   Then, taking the most liberal view for these plaintiffs of the statutes then in force, what is the result?   Gabriel Andre died November, 1860; at that time he had two married daughters in France; the administration was closed in 1868; these daughters did not move with respect thereto until March, 1884.

Under the most liberal construction that could be given to these statutes, the right of these parties to sue, so far as the realty was concerned, ended three years after administration, to-wit, in 1871; hence any rights that they might have had, under the statutes, pertaining to realty here, ceased in 1871.

But the structure of this so-called bill calls for a great many exceptions, which may be disposed of by a simple comment. Proceedings were instituted in the state court, where legal and equitable matters may both be pursued in the same case. These parties claimed their supposed interest in the realty, but after the remarks already made, it will be seen they had none. They also claim an interest in certain personalty in the hands of the residuary legatees, namely, $4,000. Now, if they sued at law, the statute of limitations might be interposed; if they sued in equity, the doctrine of laches. But the bill being one of those mixed bills, it comes here without having been reformed. It should have been reformed to comply with the equity rules of this court. That, however, would be a mere matter of formal proceeding; because leave would be granted for the parties to make such changes pertaining to the form as would preserve their rights under the equity rules prescribed by the supreme court. But there can be no phase of the case which would bring them here on the equity side of the court, under what has already been said, namely, that they have no interest in the realty at all. Consequently, if they are not barred by the statute of limitations, their remedy is adequate at law for money had and received. The result is that this bill, as it stands before the court, is undoubtedly defective, not for form only, but for substance. Eliminating the realty from this controversy, there is nothing left but an ordinary money demand; and plaintiffs must sue at law for that.

The case that went to the supreme court, (of *Sullivan* v. *Burnett*, 105 U. S. 334,) and that of *De Franca*, decided at the last term, Justice MILLER giving the opinion, are conclusive so far as the realty is concerned. As to a demand for money had, it is to be pursued by an action at law. It is for the parties to say whether, with the statute of limitations before them, they choose to bring a proper action with regard to the money demand, or leave the matter as it is.

The demurrer is sustained, not for technical objections which have been presented, and which it would be very proper to consider had there been an original bill filed here, (but as this is a removed case, any such objections could have been cured by reforming the pleadings.) Under the facts stated,—and I suppose there is no dispute in regard to them,—the parties are entirely mistaken as to the realty, and if there is any demand for the personalty, that is to be pursued at law.

Demurrer sustained, and bill dismissed.