THOMPSON v. CORNELIUS.

No. 3345.    Opinion Filed February 8, 1916.

(155 Pac. 602.)

**INDIANS—Allotments—Descent and Distribution.** Where a citizen of the Creek Nation died intestate after receiving her allotment, leaving her surviving her noncitizen husband and their child, a citizen of the Creek Nation, **held**, that, although allotted, the lands are still "lands of the Creek Nation" within the meaning of section 6 of the Supplemental Agreement (Act Cong. June 30, 1902, c. 1323, 32 Stat. 501), following **Washington v. Miller**, 235 U. S. 422, 35 Sup. Ct. 119, 59 L. Ed. 295. **Held**, further, that Enabling Act, sections 13, 21, and Const. art. 25, section 2, in effect repealed that part of section 6 of the Supplemental Agreement (Act Cong. June 30, 1902), providing that descent and distribution of land and money, provided for by an act of Congress approved March 1, 1901 (Act March 1, 1901, c. 673, 31 Stat. 861), shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas, and substituted therefor the laws of the Territory of Oklahoma thus extended to and put in force throughout the state, leaving in force the two provisos contained in section 6,

which survive and operate as such upon the laws extended to the extent of limiting the same, so that "only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation," and "that if there be no person of Creek citizenship to take the descent and distribution of said estate then the inheritance shall go to noncitizen heirs in the order named in" the laws of the State of Oklahoma. Construing which, it is **held,** further, that the child took the whole allotment of the mother to the exclusion of the noncitizen father, and that a purchaser from him of one-half thereof took no title.

(Syllabus by the Court.)

*Error from District Court, Okmulgee County;*
*Wade S. Stanfield, Judge.*

Action by Pearlie Thompson, by her guardian, Harwood Keaton, against W. D. Cornelius. Judgment for defendant, and plaintiff brings error. Reversed and rendered.

*Stanford & Cochran,* for plaintiff in error.

*Irwin Donovan,* for defendant in error.

TURNER, J.   On October 24, 1910, in the district court of Okmulgee county, Pearlie Thompson, a minor, by her guardian sued W. D. Cornelius to clear her title. The facts admitted by the demurrer to defendant's answer are that in June, 1909, Percilla Rentie, a citizen of the Creek Nation, died intestate, after receiving her allotment, leaving her surviving her husband, Spencer Thompson, a noncitizen of the Creek Nation, and Pearlie Thompson, their only child, who is also a citizen of the Creek Nation, and that thereafter Spencer Thompson conveyed to W. D. Cornelius an undivided one-half interest in the allotment of Percilla. In overruling the demurrer to the answer the court, in effect, held that the child and the father took title thereto in equal parts. It is contended that whether he

erred turns upon the question of whether section 6 of the Supplemental Agreement governs the devolution of the allotment. Plaintiff says it does, and that under its first proviso she is entitled to inherit the whole estate to the exclusion of the father. Said section reads:

'The provisions of the act of Congress approved March 1, 1901 (31 Stat. L. 861), in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed, and the descent and distribution of land and money provided for by said act shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas, now in force in Indian Territory: Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation: And provided, further, that if there be no person of Creek citizenship to take the descent and distribution of said estate then the inheritance shall go to noncitizen heirs in the order named in said chapter 49."

On the other hand, it is contended that Enabling Act, secs. 13, 21, and Const. art. 25, sec. 2, had the effect to repeal or supersede section 6 of the Supplemental Agreement and put in force the laws of descent and distribution of the Territory of Oklahoma at the time of its admission as a state, and that the same governed the devolution of this allotment. Both contentions are right in part and wrong in part. In *Jefferson v. Cook et al.*, 53 Okla. —, 155 Pac. 842, in the syllabus, we said:

"That Enabling Act, secs. 13, 21, and Constitution, art. 25, sec. 2, in effect repealed that part of section 6 of the Supplemental Agreement (Act June 30, 1902), providing that 'the descent and distribution of land and money provided for by an act of Congress approved March 1, 1901, shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas,' and substituted therefor the laws of the Territory of Oklahoma thus extended

to and put in force throughout the state, leaving in force the two provisos contained in section 6, which survive and operate as such upon the laws extended to the extent of limiting the same, so that 'only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation,' and 'that if there be no person of Creek citizenship to take the descent and distribution of said estate then the inheritance shall go to noncitizen heirs in the order named in' the laws of the State of Oklahoma."

It will not do to say that "lands of the Creek Nation," contained in the provisos brought over, have no reference to allotted lands, as here, but refer to unallotted lands only. This for the reason that it was held to the contrary in *Washington v. Miller,* 235 U. S. 422, 35 Sup. Ct. 119, 59 L. Ed. 295.

Defendant next contends that Rev. Laws Okla. 1910, sec. 8416, *et seq.,* without said provisos, is the governing statute here because, he says, the same was made applicable by Act Cong. May 27, 1908, c. 199, 35 Stat. 312, in force at the time decent was cast. He relies upon section 9, which reads:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee: Provided further, that if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March fourth, nineteen hundred and six, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof, for

the use and support of such issue, during their life or lives, until April 26th, nineteen hundred and thirty-one; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from all restrictions; if this be not done, or in'the event the issue hereinbefore provided for die before April twenty-sixth, nineteen hundred and thirty-one, the land shall then descend to the heirs, according to the laws of descent and distribution of the State of Oklahoma, free from all restrictions: Provided further, that the provisions of section twenty-three of the act of April twenty-sixth, nineteen hundred and six, as amended by this act, are hereby made applicable to all wills executed under this section."

He contends that the words "the lands," as used in the second proviso, refer to the whole allotment, as did the same words in section 7 of the Original Creek Agreement, and cites in support of his contention *Woodward v. de Graffenried*, 238 U. S. 284, 35 Sup. Ct. 764, 59 L. Ed. 1310, approving our construction of said section in *de Graffenried v. Iowa Land & Trust Co.*, 20 Okla. 687, 95 Pac. 624. Assuming, but not deciding, that such contention is correct, section 9 has nothing to do with this case. This for the reason that said section is dealing only with lands of any allottee whose death *ipso facto* removes restrictions on its alienation. This is patent from the language with which the section starts out:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land."

This is immediately followed by a proviso, in effect:

"That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless," etc.

—And providing further, in effect, that if any member of the tribes of a certain or more quantum of blood shall

die leaving certain issue born since a certain time, the homestead of such deceased allottee (of course in such land) shall remain inalienable (unless, etc.) for the use of certain issue until a certain time, but if no such issue survive, then such allottee, if an adult, may dispose of his homestead (in such allotted land) by will, etc., and if this be not done or the issue referred to die before a certain time, the land shall then descend, etc. As the pleading demurrer to fails to disclose that the restrictions on the allotment of Percilla were removed *ipso facto* upon her death, and hence the same fell within the class of allotments designated by this act, we repeat that this act had nothing to do with this case.

We are therefore of opinion that Pearlie Thompson, being a citizen of the Creek Nation, inherited the whole allotment to the exclusion of her father, Spencer Thompson, and that the defendant, W. D. Cornelius, took no title thereto, and that the court erred in overruling the demurrer to the answer. The cause is reversed, and judgment rendered, vesting title to the entire allotment in Pearlie Thompson to the exclusion of Spencer Thompson, and clearing her title of the deed from him to the defendant, W. D. Cornelius.

All the Justices concur, except SHARP, J., who dissents.