HUGHES *et al.* v. BELL *et al.*

No. 5576.  Opinion Filed February 15, 1916.

(155 Pac. 604.)

1.  **INDIANS—Estate of Creek Allottee—Descent and Distribution.**
Where an allottee of the Creek Nation died February 4, 1912,
the descent of such allottee's estate is cast by the laws of Okla-
homa, subject to the provisos of the sixth section of the Creek
Supplemental Agreement (Act June 30, 1902, c. 1323, 32 Stat.
501) that "only citizens of the Creek Nation, male and female,
and their Creek descendants shall inherit lands of the Creek
Nation," and "that if there be no person of Creek citizenship
to take the descent and distribution of said estate then the in-
heritance shall go to noncitizen heirs in the order named in"
the laws of the State of Oklahoma.

2.  **SAME.**  Where a citizen of the Creek Nation died February 4,
1912, leaving a surviving wife, who was a Creek citizen, and no
issue, and no father nor mother, nor brother nor sister, his
whole estate vested in the surviving wife, under subdivision 5,
sec. 8985, Comp. Laws 1909. (section 8418, Rev. Laws 1910).

(Syllabus by Collier, C.)

*Error from District Court, Okmulgee County;*
*Wade S. Stanfield, Judge.*

Action by R. H. Hughes and another against H. H.
Bell and others.  Judgment for defendants, and plaintiffs
bring error.  Affirmed.

*Davidson & Williams,* for plaintiffs in error.

*N. A. Gibson* and *T. L. Gibson,* for defendants in
error.

Opinion by COLLIER, C.  This suit was instituted by
plaintiffs in error against defendants in error, to quiet
their title to an undivided half interest in 80 acres of
land described in the petition, and it is alleged that Lucy
Fox was the owner of the other undivided half interest in

said land.  Hereinafter the parties will be designated as they were in the trial court.  Defendants answered, setting up title to the whole of said 80 acres of land in Sallie McCoy, subject to an oil and gas mining lease, which they allege was then owned by J. F. Paulter, Sherman Fleetwood, Perry McKay, and H. H. Bell.  By agreement, the case was tried upon an agreed statement of facts, which are substantially as follows:  That the 80 acres of land described in the petition are situated in Okmulgee county, Okla., and were allotted and patented to Charles Fox, also known during his lifetime as Charley Fox, together with other lands as his distributive share as a citizen by blood of the Muskogee (Creek) Tribe of Indians; that said Charles Fox was a full-blood Creek Indian, and died seised of an estate of inheritance in said 80 acres of land February 4, 1912, being at the time of his death an actual *bona fide* resident of Okmulgee county; that he left surviving him as his only heirs his widow, Lucy Fox, and his nephews, Luke and William Fox, who were the sons of a deceased brother of said Charles Fox; and that said Charles Fox did not leave surviving him either a child or descendants of a child, father or mother, brother or sister, or the descendants of brothers or sisters, save and except the said Luke and William Fox, his nephews; that Lucy, Luke, and William Fox are all full-blood Creek Indians, duly enrolled as such; that on March 4, 1912, William and Luke Fox, for a valuable consideration, each executed and delivered to R. H. Hughes a warranty deed to their undivided interest in said 80 acres of land, which deeds were duly approved March 18, 1912, by the judge of the county court of Okmulgee county; that said deeds were filed for record in the office of the register of deeds of said county on March 18, 1912; that on March 23, 1912, plain-

tiff R. H. Hughes, for a valuable consideration, made, executed, and delivered to plaintiff C. R. Privett his warranty deed to an undivided half interest in said 80 acres of land; that said deed was filed for record in the office of the register of deeds of said county on May 21, 1912; that Lucy Fox, on April 8, 1912, for a valuable consideration, made, executed, and delivered to Sallie McCoy a warranty deed for her interest in said 80 acres of land; that said deed was duly approved on May 6, 1912, by the county court of Okmulgee county, and was filed for record in the office of the register of deeds of said county on May 6, 1912; that at the time of the execution of the last deed above mentioned the grantor, Lucy Fox, believed that she had inherited from her deceased husband, Charles Fox, only an undivided half interest therein; and that said Sallie McCoy believed she was only getting thereby an undivided half interest therein; that after the execution and delivery of the deed last above described, said Sallie McCoy married defendant Sherman Fleetwood, and has since been known as Sallie Fleetwood; that on March 8, 1913, Lucy Fox made, executed, and delivered to Sallie Fleetwood, who is the defendant, Sallie McCoy, a warranty deed of all of said 80 acres of land; that said deed was duly approved on March 8, 1913, by the county judge of said county, and was filed for record in the office of the register of deeds of said county on March 8, 1913; that Sallie Fleetwood, on March 8, 1913, for a valuable consideration, made, executed, and delivered to J. F. Paulter, Sherman Fleetwood, and Perry McKay an oil and gas mining lease on said 80 acres of land; that said lease was filed for record in the office of the register of deeds of said county on March 8, 1913; that defendant H. H. Bell, by assignment from Sherman

Fleetwood, Perry McKay, and J. F. Paulter, has acquired an undivided half interest in whatever estate, rights, or privileges were obtained by the execution and delivery of the oil and gas mining lease from Sallie Fleetwood to J. F. Paulter, Sherman Fleetwood, and Perry McKay; that the county court of Okmulgee county is the court having jurisdiction of the settlement of the estate of said Charles Fox, deceased; and that the premises described are now, and have been, since before the institution of this suit, in possession of plaintiffs for the benefit of the rightful owners of said land.

It does not appear from the evidence in the case that decedent, Charles Fox, disposed of said land by will. The trial court held that Sallie McCoy, who was then Sallie Fleetwood, was the owner in fee simple of said 80 acres of land, and that H. H. Bell, Sherman Fleetwood, J. F. Paulter, and Perry McKay were the owners of an oil and gas mining lease thereon, that plaintiffs had no right, title, or interest in or to said lands, and rendered judgment, quieting title in said Sallie McCoy in and to said 80 acres of land, to which plaintiffs duly excepted. In due time, plaintiffs moved the court for a new trial, which motion was overruled and excepted to. To reverse the judgment rendered, plaintiffs in error perfected this appeal.

It is contended by both parties to this controversy that the descent in this case is cast under the laws of Oklahoma. The contention of the parties, the heirs to said lands being Creek citizens, is sound, and is in accord with the holding of this court in *Thompson v. Cornelius*, 53 Okla. 85, 155 Pac. 602, and *Jefferson v. Cook et al.*, 53 Okla. 272, 155 Pac. 852.

It is the contention of plaintiffs that the descent in this case is cast under subsection 2, sec. 8985, Comp. Laws 1909 (section 8418, Rev. Laws 1910), which reads:

"If the decedent leave no issue, the estate goes one-half to the surviving husband or wife, and the remaining one-half to the decedent's father or mother, or, if he leave both father and mother, to them in equal shares; but if there be no father or mother, then said remaining one-half goes, in equal shares, to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, by right of representation. If decedent leave no issue, nor husband nor wife, the estate must go to the father or mother, or if he leave both father and mother, to them in equal shares: Provided, that in all cases where the property is acquired by the joint industry of husband and wife during coverture, and there is no issue, the whole estate shall go to the survivor, at whose death, if any of the said property remain, one-half of such property shall go to the heirs of the husband and one-half to the heirs of the wife, according to the right of representation."

It is the contention of defendants that the descent is cast under subsection 5 of said section 8985, Comp. Laws 1909 (section 8418, Rev. Laws 1910), which reads:

"If the decedent leave a surviving husband or wife, and no issue, and no father, nor mother, nor brother, nor sister, the whole estate goes to the surviving husband or wife."

Therefore there is only one question involved in this appeal, which is a construction of said subsections 2 and 5 of the laws of descent of this state. It is insisted by plaintiffs that the descent in this case is cast under subsection 2, *supra,* and that said subsections 2 and 5 are in conflict; but they cite no authority in support of their contention. We are unable to agree with plaintiffs that

the descent in this case is cast by said subsection 2, or that there is a conflict in said subsections above quoted. If, however, it be admitted that they are in conflict, subsection 5 must be regarded as controlling, under the well-settled canon of statutory construction that a later provision, being the last expression of the legislative intention, must prevail.

"The different sections or provisions of the same statute or Code should be so constructed as to harmonize and give effect to each, but if there is an irreconcilable conflict, the later in position prevails.  *  *  *  Where the statute expresses a general intent and afterwards an inconsistent particular intent, the latter will be taken as an exception from the former, and both will stand." (Lewis' Sutherland Stat. Const. [2d Ed.] p. 514.)

Said sections of the law of succession in Oklahoma were adopted from Dakota, and history cites that the laws so in force in Dakota were copied from California in 1877. In the case of *Lowrey v. Le Flore,* 48 Okla. 235, 149 Pac. 1112, the following language in reference to said section is used: "The statute seems to have come to us from California, via Dakota." Prior to the adoption by Dakota of said section, the Supreme Court of California had considered and contrued said subdivision 5, and hence, so far as Dakota was concerned, said construction of the California Supreme Court is binding. The leading case from California, decided April 18, 1889, is *Ingram's Estate v. Clough et al.,* 78 Cal. 586, 21 Pac. 435, 12 Am. St. Rep. 80, wherein it is said:

"Hannah G. Ingram died intestate, and left surviving her John W. Ingram, her husband, but left no issue, and no surviving father or mother, brother, or sister. There were living, however, at the time of her death, certain children and grandchildren of a deceased sister,

who are the appellants herein. A decree of distribution was rendered May 10, 1888, in the court below, by which one-half of the estate was distributed to the said surviving husband (or rather to his assignee, Kowalsky), and the other half to the said children of the deceased sister. Afterwards, upon due notice and hearing, on July 18, 1888, the decree was amended so as to distribute the whole of the estate to the said assignee of said surviving husband. From this amendment of the decree the appeal herein is taken.

"It is entirely beyond doubt that the whole of the estate should have been distributed to the surviving husband. Paragraph 5 of section 1386 of the Civil Code is too clear to present any difficulty of construction whatever. It is as follows: 'If the decedent leave a surviving husband or wife, and neither issue, father, mother, brother, nor sister, the whole estate goes to the surviving husband or wife.' Paragraph 2 of said section refers to the case where there is a surviving brother or sister, and provides that in such case, if there be also children of the deceased brother or sister, they shall take their parents' share by right of representation. It is vain to argue agains the injustice of the rule, or to contend that in a case like the one at bar the children of a deceased sister ought to have a share in the estate when there is not any surviving brother or sister, as well as when there is. Succession to estates is purely a matter of statutory regulation, which cannot be changed by courts.

"We think the court had power to modify the decree upon the ground stated in the motion to amend, and that the power was properly exercised. The judgment of the court below is affirmed."

The above case, if not controlling, is at least persuasive, and is supported by the case of *Sweetland v. Transberg* (C. C.) 176 Fed. 641.

It is earnestly argued by plaintiffs that to uphold the rule of descent as held by the trial court would necessarily

work great injustice, as to which we express no opinion. Whether it does or does not work injustice cannot be considered by us, as the duty of this court is to construe legislative acts, and not to make them. If the hardship exists as claimed by plaintiffs, the remedy is with the Legislature.

In order to have cast the descent to any part of said land in the nephews of the deceased, under said subsection 2, it was necessary that there be living at the time of the death of decedent a brother or sister, which is not the case in the instant case. In this case, decedent died, leaving a surviving wife, but no issue, nor father, nor mother, nor brother, nor sister. Consequently the whole estate descended to the surviving wife. That it was the intention of the Legislature to exclude from inheritance the issue of deceased brothers and sisters, where there was no living brother or sister of decedent at the time of his death, is strongly supported by subsection 4 of said section 8985, *supra*, which reads:

"If the decedent leave no issue, nor husband, nor wife, nor father, and no brother or sister is living at the time of his death, the estate goes to his mother, to the exclusion of the issue, if any, of deceased brothers or sisters."

We think the trial court, under the agreed facts in this case, correctly applied the law governing the descent cast upon the death of decedent Fox, all the heirs being Creek citizens, and hence did not err in rendering the judgment complained of.

It follows that the court was free from error in denying a new trial. The judgment should be affirmed.

By the Court: It is so ordered.