### ROSS v. WERTZ et al.

No. 7473—Opinion Filed Jan. 29, 1918.

Rehearing Denied May 21, 1918.

(172 Pac. 968.)

**1. Indians—Allotment—Inheritance — Statute.**

The inheritance of lands allotted to a Creek Freedman, who died after the taking effect of the Creek Supplemental Agreement of June 30, 1902, c. 1323, 32 Stat. 500, and before statehood, is cast according to chapter 49, Mansfield's Digest of the Statutes of Arkansas, as modified by section 6 of such agreement.

## 2. Same—Next of Kin.

Subject to dower or to title by curtesy consummate, the inheritance of the allotted lands of a Creek Freedman, none of whose ancestors were of Creek blood or of Creek citizenship, who died intestate without issue, in the year 1903, is cast upon the nearest kin of the decedent of the nearest common ancestral lineage who are Creek citizens or Creek descendants of Creek citizens. In case of failure of such kinsmen, so qualified, the surviving spouse, if a Creek citizen or Creek descendant of a Creek citizen, may take. In case of entire failure of such kinsmen or surviving spouse, meeting the requirements imposed, the inheritance shall go to non-citizen heirs in the order named in Mansfield's Digest of the Statutes of Arkansas.

## 3. Same.

If a Creek Freedman, none of whose ancestors were of Creek blood or of Creek citizenship, died in 1903 intestate and without issue, the fact that kinsmen, who are, themselves, Creek citizens, must trace their kinship to the decedent only through non-citizen blood, is not of itself a bar to inheriting allotted lands of the decedent.

## 4. Same—Statute.

Two brothers, Cherokee Freedmen, one of whom is dead and the other living, would inherit, if both were living and not barred because of their noncitizenship in the Creek Nation, the allotment of a deceased Creek Freedman. The deceased brother left one child now living; the living brother has eight living children and one living grandchild, the offspring of his deceased child. The children of both brothers, including the grandchild, are Creek citizens through maternal blood. The deceased child likewise was a Creek citizen. The intestate died in the year 1903. Held, that under chapter 49, Mansfield's Digest of the Statutes of Arkansas, construed in connection with section 6 of the Creek Supplemental Agreement of June 30, 1902, such living children, belonging to the same class of kin, take equally in their own right, and the grandchild takes its parent's interest, by representation, each of the children and the grandchild named taking one-tenth interest in the inheritance.

(Opinion by Stewart, C.)

Error from District Court, Wagoner County; J. H. Sutherlin, Special Judge.

Action against B. F. Wertz and others. Judgment for the named defendant, and David Ross brings error. Reversed and remanded for a new trial.

Dan M. Meredith, W. P. Z. German, and Aldrich Blake, for plaintiff in error.

Jess W. Watts, E. A. Summers, and E. M. Gallaher, for defendant in error.

Grant Foreman and J. D. Simms, amici curiae.

Opinion by STEWART, C. Betsy Primous, a Creek Freedman, died intestate without issue in July, 1903, leaving as her surviving husband, Joe Primous, a Creek Freedman who remarried, after which he and his second wife conveyed the allotment of Betsy Primous to J. H. White under whom the defendant in error B. F. Wertz claims title by deed of conveyance. Joe Primous died in 1905. An action was begun in the district court by one of the alleged heirs of Betsy Primous to remove cloud from title and cancel the deeds under which B. F. Wertz claimed the land. Numerous defendants were made, and several pleas of intervention were filed in which different persons claimed to be heirs of Betsy Primous. Trial was had, and the court found that the land descended to Joe Primous as the sole heir of his deceased wife, and that B. F. Wertz, under the deeds of conveyance, was the owner of the same, all other claimants being barred. From such judgment the plaintiff in error, David Ross, duly appeals to this court.

This case involves a construction of section 6 of the Supplemental Creek Treaty, approved June 30, 1902, in connection with chapter 49, Mansfield's Digest of the Laws of Arkansas. Section 6 reads:

"The provisions of the act of Congress approved March 1, 1901 (31 Stat. L. 861), in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed and the descent and distribution of land and money provided for by said act shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas now in force in Indian Territory: Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation: And provided further, that if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the order named in said chapter 49."

It has been held by this court that, by virtue of the terms of the Enabling Act, and because of the adoption of the Constitution, Creek lands and money, since the advent f statehood, descend under the laws of this state, modified by the provisos in the latter part of the section quoted. Thompson v. Cornelius, 53 Okla. 85, 155 Pac. 602; Jefferson v. Cook, 53 Okla. 272, 155 Pac. 852; Hughes et al. v. Bell et al., 55 Okla. 555, 155 Pac. 604. However, in this case, the intestate having died in 1903, the inheritance is

cast under chapter 49, Mansfield's Digest of the Laws of Arkansas, as limited by the provisos of section 6, supra. Section 2522, chapter 49, Mansfield's Digest, reads in part:

"If there be no children, nor their descendants, father, mother, brothers or sisters, nor their descendants, then to the grandfather grandmother, uncles and aunts and their descendants, in equal parts, and so on, in other cases, without end, passing to the nearest lineal ancestors, and their children and their descendants, in equal parts."

And section 2528, reads:

"If there be no children, or their descendants, father, mother, nor their descendants, or any paternal or maternal kindred capable of inheriting, the whole shall go to the wife or husband of the intestate. If there be no such wife or husband, then the estate shall go to the state."

Section 2531 in part reads:

"In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs."

Keeping in mind section 6, supra, and the foregoing quotations from Mansfield's Digest, it becomes our duty to discover those upon whom the inheritance of the allotment is cast. We find that Betsy Primous, an adopted Creek, was born ten years before our Civil War, and was the illegitimate child of Chloe Webber, deceased, a Cherokee slave. In the trial had, the names of four men were entered for the honor of being the father of the intestate. The trial court properly found that it was impossible to tell who was her father; that no man had ever recognized her as his child. The evidence shows that none of her ancestors were either of Creek blood or Creek citizenship, and that her nearest living blood relatives of Creek citizenship consist of plaintiff in error David Ross, also Patsy Harrison, Lizzie Johnson, Lagonia Harlen, Bessie Cordrey, Annie Williams, Henry Ross, Jr., John Ross, Jessie Ross and Waitie Ross. David Ross is the son of Henry Ross, Sr., deceased. Eight of the others named are the children of Joe Ross, brother to Henry Ross, Sr., deceased. Waitie Ross is a Creek citizen, and the only issue of a deceased child of Joe Ross. Henry Ross, Sr., and Joe Ross were Cherokee Freedmen, but the children of each are Creek citizens through the blood of their respective mothers. The two brothers were the sons of Louisa Webber, a sister of Chloe Webber, mother of the deceased. They were therefore first cousins of the decedent, their children of course being her cousins once removed. Counsel denominated them as her second cousins, but, accurately speaking, second cousins belong to the same class in the descending scale from a common ancestry, the next class below first cousins. Children of brothers and sisters are first cousins. Children of first cousins, are second cousins, and so on down the scale. Brothers and sisters have the same blood; cousins, if of the white blood, have each a half, and second cousins each a fourth of a common strain.

The evidence also shows that Jack Smith, deceased, was an enrolled Creek Freedman, and a half brother of Sam Webber, who was the father of Chloe Webber. Smith has living children, who would of course be half first cousins of Chloe Webber, the allottee's mother; the deceased was therefore a half cousin once removed, to the children of Jack Smith. These children were not parties to the suit, but the defendant in error has deeds from some of them and suggests that, as under Mansfield's Digest, relatives of the half blood inherit equally with those of the whole blood, the children of Jack Smith, bearing in the ascending scale the same relation to the deceased allottee that is borne by the Ross claimants in the descending scale, would have, equal or better right to inherit. It is clear from the language of section 2522, supra, that, in the absence of issue of the decedent, inheritance is cast upon the nearest lineal ancestors, if any are living, otherwise upon the nearest living lineal descendants, if any, of the nearest common lineal ancestor. In the event of failure of blood kinsmen, the surviving spouse takes, and if there be no surviving spouse, the property escheats. Construed in connection with section 6, supra, the heirs, in the order named, take the inheritance, provided those taking are Creek citizens or Creek descendants of Creek citizens, otherwise the property goes to noncitizen heirs in the order named. In case of the Ross claimants, the nearest lineal ancestors, common to them and the decedent, are the grandparents of Betsy Primous. The nearest lineal ancestors common to the children of Jack Smith and Betsy Primous are the great-grandparents of Betsy Primous, being grandparents of the children of Jack Smith. Hence the children of Jack Smith, whether citizen or noncitizen, must be eliminated from our further consideration.

This case has been ably briefed by the parties. We have also had the benefit of the suggestions of amici curiae. The plain-

tiff in error claims that he is entitled to the entire estate as the only next of kin capable of inheriting: that his rights are not only superior to the surviving husband, under whom the defendant claims, but to any claim of his cousins, the children of Joe Ross. He contends that, it being necessary for his cousins to trace their relationship to the intestate through a living ancestor, they cannot inherit. He concedes that, if Joe Ross were dead, his children could take, but asserts that the circumstance of his father's death gives him the inheritance. The defendant in error urges that the Ross claimants, including the plaintiff in error, are barred for the reason that it is necessary for them to trace their relationship to the intestate through alien or noncitizen blood; that Joe Primous, being of Creek citizenship, is not under such disability, and takes the allotment in fee simple. The suggestions of the amici curiae are largely in line with those of the plaintiff in error, except that it is contended that the children of Joe Ross living have the same right to inherit as the plaintiff in error who is the child of Henry Ross, Sr., deceased.

Much has been said about the land being an ancestral estate. Under the Arkansas law of descent and distribution, adopted by section 6, supra, but modified by the provisos therein, the statutes provide (section 2531, supra) for an estate in the nature of the feudum antiquum of the common law. Under the authority of the much-quoted case of Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615, this court has accepted the doctrine that allotted lands in the Creek Nation are in the nature of what is termed ancestral estates, which, on the death of the intestate, pass in the ancestral line through whose tribal blood the allottee received the property. The result is that, in case one parent was a Creek citizen and the other a noncitizen, only the kin in the Creek line can inherit in the order named in Mansfield's Digest; but, if both father and mother were Creek citizens, the estate passes equally to the father and the mother, or to next of kin in such respective lines. Rentie et al. v. McCoy, 35 Okla. 77, 128 Pac. 244; Brady v. Sizemore, 33 Okla. 169, 124 Pac. 615; Sizemore v. Brady, 235 U. S. 441, 35 Sup. Ct. 135, 59 L. Ed. 308; Pigeon et al. v. Buck, 38 Okla. 101, 131 Pac. 1084; Roberts v. Underwood, 38 Okla. 376, 132 Pac. 673; Thraves et al. v. Greenless, 42 Okla. 764, 142 Pac. 1021; McDougal v. McKay et al., 43 Okla. 251, 142 Pac. 987; Lovett v. Jeter et al., 44 Okla. 511, 145 Pac. 334; Thorn v. Cone et al., 47 Okla. 781, 150 Pac. 701; Finley v. American Trust Co. et al., 51 Okla. 489, 151 Pac. 865.

In the Shulthis-McDougal Case, the court construed that part of section 2531 of Mansfield's Digest quoted supra, but did not hold that these estates are purely ancestral. We quote the following from the language of the court:

"The lands of that tribe fit into neither of the classes mentioned in the statute. They do not come to a member of the tribe by inheritance from any ancestor, nor could they be spoken of with propriety as a purchase. In applying the statute in this case, therefore, we shall have to proceed by analogy only."

Further the court said:

"It was his birthright. It came to him by the blood of his tribal parent, and not by purchase."

The controlling idea in the opinion is that it was the purpose of Congress and of the Indians to preserve such property only to the members of the tribe. The holding in that case has become a rule of property in this state, and has been accepted, if not indorsed, by the Supreme Court of the United States. McDougal v. McKay, 237 U. S. 372, 35 Sup. Ct. 605, 59 L. Ed. 1001; Pigeon et al. v. Buck, 237 U. S. 386, 35 Sup. Ct. 608, 59 L. Ed. 1007. This court, by veiled suggestion, has at various times indicated doubt as to the soundness of the rule, but has uniformly followed the same on the theory of being bound by the decision of the federal courts where Indian matters are involved. In Thorn v. Cone, 47 Okla. 781, 150 Pac. 701, Mr. Justice Kane observes:

"In the very nature of things, in the cases where the devolution of the immediate allotment from the government is involved, there can be no propositus, as the term is generally understood, from whom succession can be traced or degrees of consanguinity reckoned. The best that can be done is to fit as nearly as may be section 2531 of chapter 49, supra, based upon the central idea of the common law of preserving ancestral estates in the line of the blood from whence they came, to conditions in the several Indian Nations wherein the principle of descent of landed estates through the blood of an ancestor was entirely foreign."

The Supreme Court of the United States in McDougal v. McKay, supra, says:

"And not only would it be improper for us to disregard the effect of the decisions already announced by the Circuit Court of Appeals and the Supreme Court of Oklahoma, which are supported by cogent reasoning, but considering the peculiar and rapidly changing conditions within the state, especial consideration must be accorded to them. We accordingly accept the doctrine announced therein. * * *"

In applying the rule, we do not find that

the courts have yet faced a case like the one at bar. It can hardly be said in this particular case that the right to the allotment was received as a birthright from ancestors; Betsy Primous died without issue; the property came from the Creeks, but not from her ancestors. for she had no Creek ancestors. It may be truly observed that, as a Creek, she is the beginning and end of her line. It would appear that the title to the land in the present case was acquired much after the nature of a gift, or, perhaps, more correctly speaking, as a consideration for services rendered or for future usefulness. However, as we do not think it necessary to determine whether this is ancestral property or a new acquisition, we withhold any opinion in that respect. •

We have been asked to impute to the intestate a Creek ancestry and an imaginary line of descent. The fiction indulged in the Shulthis-McDougal Case. like Achilles' wrath to Greece, is the "direful spring" of many of the woes of the bench and bar of this state. We will try in this case to confine ourselves as nearly as possible to facts and to a construction of the statutes involved.

If this property is purely ancestral, the husband cannot inherit, not being in an ancestral line with the intestate. Ancestral nature imputed to the property would not help any of the other parties to this controversy, for none of them descend from any ancestral source from which the property, either by imputation or in fact, was derived. The Creek blood of the Ross claimants comes from the maternal side with which the intestate was in no way connected. Giving a reasonable construction to the first proviso of section 6, supra, it is evident that the intention of the Indian tribe and of Congress was that lands and money of the tribe should be preserved, if possible, to citizens of the Creek Nation and their descendants, and, by so holding, the court in the Shulthis-McDougal Case could have given the property as was done, to the father, who was a Creek, to the exclusion of the mother, who was a noncitizen. But assuming that, for future exigencies, it was proper, by analogy, to attribute ancestral character to such property, it does not follow that the analogy is complete, nor did the court so hold. If the property under consideration is purely ancestral, it must escheat for want of heirs in the Creek ancestral line who may take. Lord Coke says:

"Whenever lands do descend from the part of the mother. the heirs on the part of the father shall never inherit and likewise, when lands descend from the part of the father, the heirs on the part of the mother will never inherit."

The courts do not favor escheats, nor do we think it possible that such was the intention either of Congress or of the Creek Indians.

The fact that section 6 authorizes inheritance by noncitizen heirs in certain events shows that it was the intention of Congress and of the Indian tribe, from which the property came, to prevent escheats. The first as well as the second proviso of section 6 shows an intention to prefer citizen heirs over noncitizens. The second proviso is to the effect that, if there be no person of Creek citizenship to take, the inheritance shall go to the noncitizen heirs in the order named in chapter 49 of Mansfield's Digest. Neither of the provisos declares that the heirs shall be in the particular ancestral line from which the property came; the letter of the section only requiring that those taking be of Creek citizenship, or of such extraction. if possible. In determining how the descent in this case should be cast, we can act in harmony, if need be, with such ancestral character as. according to the decisions, attaches to Creek lands. We are justified in saying that, though this property may be primarily ancestral. yet, as the property originally belonged to the Creek Nation, subject to supervision by the federal government, the Creek Nation and Congress had full power, preparatory to the allotting of the same, to establish rules for its descent, and to provide for any contingency that might arise.

Since the partially ancestral character of such property was established by a construction of that part of the treaty, providing for descent in accordance with chapter 49, Mansfield's Digest, subject to the modifications in section 6, it would be reasonable to hold that, in the event of failure of heirs along that ancestral line from which the property may have been derived, the inheritance should be cast in any other manner that might reasonably appear to be authorized by the agreement between Congress and the Creek Nation. It would follow, therefore. that, if Betsy Primous left no blood kinsmen who were Creek citizens or Creek descendants of such citizens, her husband, Joe Primous, would take the inheritance, he being a Creek citizen. However, the evidence shows there are other claimants not only related by blood, but qualified by Creek citizenship. The defendant in error urges that such kinsmen cannot take, for the reason

that they can only trace their relationship to the intestate through noncitizen blood. Upon a reading of the section, it will be discovered that no such requirement was contemplated. It would be impossible, in this case, to find any one related to the defendant through ancestral Creek blood, for no such blood coursed her veins. The defendant in error is wrong for a further reason. Section 2527 of Chapter 49, Mansfield's Digest, reads:

"In making title by descent, it shall be no bar to a demandant that any ancestor through whom he derives his descent from the intestate is, or has been, an alien."

Missouri has an identical statute as to alienage of ancestors, and in Sullivan v. Burnett, 105 U. S. 334, 26 L. Ed. 1121, the Supreme Court of the United States, construing the section, says:

"In making title by descent it may be that his ancestor is or was an alien, without inheritable blood, either at common law or by statute. That fact would ordinarily constitute an insuperable difficulty in the way of his taking or holding the estate. But the statute elsewhere interposes in his behalf, and says that he shall not be barred in tracing his descent from the intestate, by reason of the fact that any ancestor is or has been an alien—language broad enough to include a living as well as a dead progenitor."

It is also held in Campbell v. Campbell, 58 N. C. (5 Jones' Eq.) 246, that children of a living alien sister of the decedent may take the inheritance, notwithstanding they trace their relationship to the decedent through their mother who is an alien. These citations meet the contention of defendant in error, and also answer the suggestion of the plaintiff in error that the children of Joe Ross cannot inherit because their father is living.

The fact being that Joe Primous is now dead, no question of curtesy consummate is involved, and we hold that the entire estate in fee simple in and to the allotment of Betsy Primous, deceased, is vested in her nearest kin of Creek citizenship; that is to say, in the living children of Henry Ross, Sr., and Joe Ross, and in the grandchild of Joe Ross, who takes by representation, its father being a deceased Creek citizen.

The next question to be determined is what interest each of the heirs named has in the land. We are not left in the dark, since not only the statutes come to our relief, but we are assisted by a construction thereof by the Supreme Court of Arkansas. Section 2530, c. 49, Mansfield's Digest, reads:

"The rule of descent prescribed in the last preceding section shall apply in every case where descendants of the intestate, entitled to share in the inheritance, shall be in equal degree of consanguinity to the intestate, so that those who are in the nearest degree of consanguinity shall take the shares which would have descended to them, had all the descendants in the same degree who shall have died leaving issue been living, so that the issue of the descendants who shall have died shall respectively take the shares which their parents, if living, would have received."

Construing which section the court, in Garrett v. Bean, 51 Ark. 52, 9 S. W. 435, says:

"If the persons composing the nearest class of kin die before the intestate, the next class in order inherits in its own right, and as next of kin. Death in that event operates to advance the next class nearest to the intestate, and substitutes the persons in it in the place thus vacated. In that case those in the next class so advanced inherit in their own right, and as next of kin; and, in the absence of statutory regulations, if equal degree, * * * take per stirpes; 'those equal in degree and nearest degree to the intestate take equal shares in their own right, while those of unequal degree, and one step further removed from the intestate, take only the shares their ancestors would have taken, if alive.' "

This cause is therefore reversed as to all the parties, and remanded for a new trial in accordance with the views herein expressed.

By the Court: It is so ordered.