Margaret Hawkins was a white intermarried citizen of the Choctaw Nation of Indians and by virtue of the fact that she was enrolled as a Choctaw citizen by marriage, received an allotment of land pursuant to the provisions of the Choctaw-Chickasaw Supplemental Agreement of September 25, 1902. She was the wife of Milton Hawkins, a citizen by blood of the Choctaw Nation.
On the 12th day of April, 1903, Margaret Hawkins died intestate and without issue, leaving surviving her husband, Milton Hawkins, her mother, Nancy Coppedge, and Mary Jane Welliever, Flora M. Parker, Frank E. Pasley, Susie Swift, and Annie Pasley Swift, paternal half-brothers and sisters. Both of her parents and her paternal half-brothers and sisters were white persons and were not enrolled as members of the Choctaw or any other tribe of Indians.
On April 7, 1905, Milton Hawkins was appointed administrator of his wife's estate by the United States court for the Central District of Indian Territory.
This proceeding originated in the county court of Bryan county, Okla., as the successor of the United States court for the Central District of Indian Territory, by the filing of a final report by Milton Hawkins in the matter of the estate of Margaret Hawkins, deceased, in which report the said Milton Hawkins, as such administrator, sought a judicial determination of the heirship of the estate of Margaret Hawkins, deceased, and the identity of the persons to whom the allotment of Margaret Hawkins, deceased, should be distributed.
Upon a hearing had in the county court upon this report, the plaintiffs in error were declared to be the sole heirs of Margaret Hawkins, and her estate vested in them subject to a life estate in Nancy Coppedge, mother of the deceased. An appeal was thereupon taken to the district court of Bryan county, where the judgment and decree of the county court was reversed and Milton Hawkins, surviving husband of Margaret Hawkins, deceased, was adjudged to be the sole heir of said decedent. From the judgment so rendered, Flora Parker, Jennie Welliever, Nelson Swift, Thomas Swift, James A Swift, Norris O. Swift, and Frank E. Pasley bring the cause regularly on appeal to this court, claiming that the judgment is contrary to the law and evidence, and that the same should he set aside and judgment rendered in favor of plaintiffs in error.
Much has been said in the briefs of counsel for both sides on the question or whether or not the allotment of Margaret Hawkins was an ancestral estate or a new acquisition. As we view the case, however, the nature of the estate of Margaret Hawkins in her allotment is only incidentally involved.
The controlling idea in every decision in either the state or federal courts since chapter 49 of Mansfields's Digest of the Statutes of Arkansas was enacted and put in force by Congress in the Indian Territory has been to so apply the law of descent embodied in said chapter 49 in respect of its operation upon Indian allotments as to preserve such allotments exclusively to the members of the tribe. Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615; Pigeon et al. v. Buck et al., 38 Okla. 101,131 P. 1083; McDougal v. McKay et al., 43 Okla. 261,142 P. 987; Thorn v. Cone et al., 47 Okla. 781, 150 P. 701; Ross v. Wertz et al., 70 Oklahoma, 172 P. 968.
In the case of Ross v. Wertz, the court said, in speaking of the Shulthis-McDougal Case, as follows:
"In the Shulthis-McDougal Case, the court construed that part of section 2531 *Page 197 
of Mansfield's Digest quoted supra, but did not hold that these estates are purely ancestral. * * *
"The controlling idea in the opinion is that it was the purpose of Congress and of the Indians to preserve such property only to the members of the tribe. The holding in that case has become a rule of property in this state, and has been accepted, if not indorsed, by the Supreme Court of the United States. McDougal v. McKay, 237 U.S. 372, 35 Sup. Ct. 605, 59 L.Ed. 1001; Pigeon et al. v. Buck, 237 U.S. 386, 35 Sup. Ct. 608, 59 L.Ed. 1007."
It is suggested in the briefs that section 2531 of Mansfield's Digest of the Statutes of Arkansas in force in the Indian Territory when Margaret Hawkins died on the 12th day of April, 1903, controls the devolution of her allotment. Said section reads as follows:
"In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs; but if the estate be a new acquisition it shall ascend to the father for his lifetime, and then descend, in remainder, to the collateral kindred of the intestate in the manner provided in this act; and in default of a father, then to the mother, for her lifetime; then to descend to the collateral heirs as before provided."
It is apparent at a glance that this statute cannot be made applicable to the situation presented in the case at bar; that the allotment of Margaret Hawkins could not be a new acquisition is so definitely settled in this state as to constitute a rule of property. Shulthis v. McDougal, supra; Pigeon et al. v. Buck et al., supra; Ross v. Wertz et al., supra.
Quoting again from Shulthis v. McDougal, supra, the Federal Circuit Court of Appeals said in the body of the opinion:
"But when its here, the time came to disband the tribe, its ownership as a political society could no longer continue, and the division of its property was more nearly akin to the partition of property among tenants in common than the grant of an estate by a sovereign owner. Under such a scheme it cannot be said that the property which passed to an allottee is a new right or acquisition created by the allotment."
Neither can it be said in this particular case that the right of Margaret Hawkins to her allotment was received as a birthright from her ancestors. Margaret Hawkins died without issue. Her allotment came from the Choctaw Tribe of Indians, but not from her ancestors for she had no Choctaw ancestors. As a Choctaw she was both the beginning and the end of her line. Whatever may be said with respect to the nature of the estate she acquired in her allotment, it is clear that it cannot be spoken of with propriety either as entirely ancestral or as a new acquisition. We have been asked to impute to the intestate a Choctaw ancestry and an imaginary line of descent, but we can perceive in the Shulthis-McDougal Case, supra, no application of the rule of analogy there resorted to which would authorize us to impute a Choctaw ancestry to Margaret Hawkins where none of her ancestors were Choctaw Indians and where it is plain that her allotment did not come to her by virtue of her Choctaw blood, but came to her solely by virtue of her marriage to a Choctaw citizen.
Keeping in mind the central purpose of Congress to preserve the allotted lands or Indians only to members of the tribe, it would be reasonable in the event of a failure of heirs in the ancestral line to cast the inheritance in such manner under the general provisions of descent and distribution contained in said chapter 49 of Mansfield's Digest as might reasonably appear to be authorized by Congress.
Section 2528 of chapter 49 of Mansfield's Digest of the Statutes of Aransas provides:
"If there be no children, or their descendants, father, mother, nor their descendants, or any paternal or maternal kindred capable of inheriting, the whole shall go to the wife or husband of the intestate. If there be no such wife or husband, then the estate shall go to the state."
We have here an estate which to the extent it came from the Choctaw Tribe of Indians is entitled to be regarded under the controlling decisions of the courts of the land as an ancestral estate, but which owing to a failure of heirs in the ancestral line from which the property might have been derived cannot be disposed of as an ancestral estate strictly so called.
It is impossible in this case to find any one related to Margaret Hawkins through ancestral Choctaw blood, for no such blood coursed in her veins. The result is that the allotment must escheat to the state unless it can be said that her husband, Milton Hawkins, as a citizen of the Choctaw Tribe, is entitled to inherit. The courts, however, do not favor escheats (Ross v. Wertz, supra, and we are not authorized to hold the allotment escheatable unless there is an entire failure of heirs capable of inheriting. We therefore hold that under the provisions of section 2528, supra, *Page 198 
the allotment of Margaret Hawkins, upon her death, vested in her husband, Milton Hawkins, he being a Choctaw citizen and the only person capable of inheriting.
While it is perhaps true that the application we have made of section 2528, supra, may not exactly fit an estate of the nature here involved, still it must be borne in mind that the application to be made of chapter 49 of Mansfield's Digest to the inheritance of an Indian estate is a problem largely of accommodation, and in view of the purpose of Congress to preserve Indian property to members of the tribe and to prevent escheats, we believe the application made is supported by both reason and authority.
In Ross v. Wertz et al., supra, the court said in the second paragraph of the syllabus, in speaking of the descent of a Creek allotment which had been cast under chapter 49 of Mansfield's Digest, where the deceased allottee was without ancestors of Creek blood or of Creek citizenship:
"Subject to dower or to title by curtesy consummate the inheritance of the allotted lands of a Creek freedman, none of whose ancestors were of Creek blood or of Creek citizenship, who died intestate without issue, in the year 1903, is cast upon the nearest kin of the decedent of the nearest common ancestral lineage who are Creek citizens or Creek descendants of Creek citizens. In case of failure of such kinsmen, so qualified, the surviving spouse, if a Creek citizen or Creek descendant of a Creek citizen, may take. * * *"
We therefore find that plaintiffs in error, being white noncitizen relatives of the deceased, are incapable of inheriting, and that the trial court committed no error in finding that Milton Hawkins was the sole heir to said allotment.
For the reasons stated in the opinion, the judgment of the trial court should be and is hereby affirmed.
By the Court: It is so ordered.