# PITMAN v. COMMISSIONER OF INTER-NAL REVENUE. .

## No. 745.

Circuit Court of Appeals, Tenth Circuit.
April 12, 1933.

James D. Simms, of Wewoka, Okl. (Wesley D. Simms, of Muskogee, Okl., on the brief), for petitioner.

John G. Remey, Sp. Asst. to the Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and T. M. Mather, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., and J. Louis Monarch, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an appeal from a decision of the Board of Tax Appeals. Petitioner is a fullblood member of the Creek Tribe of Indians, enrolled opposite No. 1833. She was married to Robert L. Pitman, Sr., a white man. There was born of this marriage a son, Robert Pitman, Jr. He was duly enrolled as a half-blood member of the Creek Nation. Petitioner was divorced from Pitman, Sr., in 1911. Pitman, Jr., was allotted 38.79 acres of land as a homestead, and 121.46 acres of land as a surplus allotment. Allotment deeds were duly executed and delivered therefor.

On October 14, 1919, Pitman, Jr., died intestate, unmarried, without issue, and seized of such allotted lands.

Pitman, Sr., claimed a one-half interest in

such allotted lands as an heir of Pitman, Jr. Petitioner claimed the whole thereof as the sole heir of Pitman, Jr. On March 8, 1920, a compromise was effected pursuant to which petitioner paid Pitman, Sr., $30,000, and the latter executed and delivered to her a quitclaim deed to such allotted lands.

On March 30, 1921, the county court of Tulsa county, Oklahoma, in the matter of the estate of Pitman, Jr., entered a decree of heirship and distribution, which in part reads as follows:

"That upon his death the said Robert Pitman, Jr., deceased, was survived by his father, a white man, and noncitizen of the Creek Tribe of Indians, and by his mother, Lucinda Pitman, a full-blood member of the Creek Tribe of Indians, enrolled opposite roll number 1833. That by reason of the premises and of the law applicable thereto upon the death of the said Robert Pitman, Jr., all of his right, title, and interest in and to the lands hereinafter described as the allotment of the said Robert Pitman, Jr., * * * (the 160.25 acres here in question) * * * descended to and vested in his mother, Lucinda Pitman, as the sole heir thereto."

In March, 1907, Pitman, Jr., leased such allotted lands for oil and gas purposes by three leases. A large number of oil wells were drilled by the lessees in 1907 and 1908. These leases expired in March, 1922. They were then producing about 100 barrels of oil daily.

On March 7, 1922, petitioner executed new leases of the allotted lands for oil and gas purposes; one to the Texas Company covering 47.5 acres for a cash bonus of $60,000 and a reserved royalty of one-eighth; one to the Pulaski Oil Company covering 72.5 acres for a cash bonus of $37,500 and a reserved royalty of one-eighth; and one to the Prairie Oil & Gas Company covering 40 acres for a cash bonus of $35,000 and a reserved royalty of one-eighth. The lease to the Pulaski Company included the homestead, and $21,500 of the bonus paid therefor was apportionable to the homestead allotment. These leases were approved by the Secretary of the Interior on April 24, 1922.

It was stipulated that the fair market value of the allotted lands was $159,120.35 on October 14, 1919.

On April 28, 1926, the Commissioner determined a deficiency tax liability of petitioner for 1922 of $9,184.71 on account of the bonuses received for the 1922 leases. Petitioner appealed to the Board of Tax Appeals. Thereafter the Commissioner moved for an increased deficiency under section 274a of the Revenue Act of 1926 (26 USCA § 1048).

The contention of the Commissioner before the Board was that the petitioner acquired an undivided one-half interest in the allotted lands by purchase and the other half by inheritance; that all of such allotted lands, except the half interest in the homestead acquired by petitioner by inheritance, were subject to taxation; that $121,750 of the bonus payments were taxable income of the petitioner; and that such payments represented no return of capital for which a depletion allowance should be made.

The contention with respect to depletion was contrary to the former ruling of the Commissioner in the instant case, but in accord with the erroneous decision of the Board in Murphy Oil Co. v. Commissioner, 15 B. T. A. 1195; reversed Murphy Oil Co. v. Burnet (C. C. A. 9) 55 F.(2d) 17; Id. 287 U. S. 299, 53 S. Ct. 161, 77 L. Ed. ——.

The Board held that the entire amount received as bonuses was subject to taxation, but decided that, since the motion of the Commissioner for an increased deficiency excluded one-half of the bonus received for the lease of the homestead, it should include only $121,750 of the bonuses in redetermining the deficiency, and directed that judgment be entered accordingly under rule 50.

The county court of Tulsa county by its decree of March 30, 1921, adjudged that the whole of the allotment, both homestead and surplus, descended to the petitioner as the sole heir of Pitman, Jr., deceased. This was in accord with the existing decisions of the Supreme Court of Oklahoma holding that the laws of descent and distribution of the state of Oklahoma made applicable to estates of decedents of the Five Civilized Tribes by sections 13 and 21 of the Oklahoma Enabling Act (34 Stat. 267, 275, 277) and section 9 of the Act of May 27, 1908 (35 Stat. 315), was subject to the proviso in section 6 of the Supplemental Creek Treaty (32 Stat. 501), which reads in part as follows:

"Provided, That only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation. * * *"

See Thompson v. Cornelius, 53 Okl. 85, 155 P. 602; Jefferson v. Cook, 53 Okl. 272, 155 P. 852; Hughes v. Bell, 55 Okl. 555, 155 P. 604; Privett v. Rentie, 75 Okl. 191, 182 P. 898; and Scott v. Ryal, 78 Okl. 12, 186 P. 206, decided February 24, 1920.

It is true that in the case of In re Estate

of Robert Pigeon, 81 Okl. 180, 198 P. 309, decided April 5, 1921, the Supreme Court of Oklahoma overruled the cases above referred to and held that such section 6 was repealed by sections 13 and 21 of the Oklahoma Enabling Act and section 9 of the Act of May 27, 1908. But the county court of Tulsa county had jurisdiction to enter the decree of heirship and distribution referred to above (sections 1384 to 1394, inc., C. O. S. 1921; Act of June 14, 1918, 40 St. 606, USCA, tit. 25, § 375), and such decree has not been appealed from nor in anywise modified.

Proceedings of probate courts are usually in rem. Freeman on Judgments (5th Ed.) § 1537. A judgment ascertaining and adjudicating heirship and directing the distribution of the estate of a decedent is not a judgment inter partes but a judgment in rem, and is evidence of the facts adjudicated against all the world. McDougal v. Black Panther O. & G. Co. (C. C. A. 8) 273 F. 113; Ennis v. Smith, 14 How. 400, 430, 14 L. Ed. 472; Mulcahey v. Dow, 131 Cal. 73, 63 P. 158; Connolly v. Probate Court, 25 Idaho, 35, 136 P. 205; Ladd v. Weiskopf, 62 Minn. 29, 64 N. W. 99, 69 L. R. A. 785; McNamara v. Casserly, 61 Minn. 335, 63 N. W. 880; In re Piper's Estate, 208 Pa. 636, 57 A. 1118; Goodrich v. Ferris, 214 U. S. 71, 80, 81, 29 S. Ct. 580, 53 L. Ed. 914. See, also, Hilton v. Guyot, 159 U. S. 113, 167, 16 S. Ct. 139, 40 L. Ed. 95. It follows that such decree effectually adjudged petitioner to be the sole heir at law of Pitman, Jr., and entitled to inherit the whole of such allotted lands, and that it is binding on the parties to this proceeding. We conclude, therefore, that petitioner acquired the whole of the allotted lands by inheritance from Pitman, Jr.

 Whether such allotted lands, and therefore the income therefrom (Bagby v. United States (C. C. A. 10) 60 F.(2d) 80, 81), became subject to taxation in passing to petitioner, must be determined from a construction of the applicable provisions of the Act of May 27, 1908, which follow:

Section 1 of the Act of May 27, 1908 (35 Stat. 312), in part reads as follows:

"All lands, except homesteads, of said allottees enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions. All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, * * * shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one."

Section 4 of such act in part reads as follows:

"That all land from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes."

Section 9 of such act in part reads as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

The provisions of section 1 by the terms of the act became effective sixty days from its date. The period of restriction was extended 25 years from April 26, 1931, by the Act of May 10, 1928 (45 Stat. 495).

Pitman, Jr., being a half-blood, it follows that section 1, supra, removed all restrictions on that portion of his allotment other than the homestead. On the removal of such restrictions, such lands and the income therefrom became subject to taxation under the provisions of section 4 of such act. Section 9, supra, deals with lands restricted at the time of the allottee's death, and not with lands from which restrictions had been theretofore removed. It did not on the death of Pitman, Jr., reimpose restrictions upon the surplus lands from which restrictions had theretofore been removed.

The homestead portion of the allotment, however, remained subject to the restrictions provided by section 1, supra, until the death of Pitman, Jr., the original allottee. Upon his death it passed by inheritance to the petitioner, a full-blood Indian heir, and became subject to the qualified restrictions imposed by section 9, supra, and remained exempt from taxation. Parker v. Richard, 250 U. S. 235, 238, 39 S. Ct. 442, 63 L. Ed. 954; Marcy v. Board of Commissioners, 45 Okl. 1, 144 P. 611; United States v. Shock (C. C. Okl.) 187 F. 870.

We conclude, therefore, that the homestead remained restricted and exempt from taxation, and that the surplus allotment became freed of restrictions and subject to taxation from and after sixty days from May 27, 1908.

■ The income received by the lessor from an oil and gas lease, whether by way of an initial bonus or as royalties on the oil and gas subsequently produced by the lessee, is taxable not as gain from the sale of capital assets, but as ordinary income. Burnet v. Harmel, 287 U. S. 103, 53 S. Ct. 74, 77 L. Ed. —; Alexander v. King (C. C. A. 10) 46 F. (2d) 235, 74 A. L. R. 174.

■ The contracts entered into between the petitioner and the oil companies in March, 1922, were leases, not sales of oil and gas rights, and both the initial bonuses and the royalties paid to the petitioner thereunder are taxable as ordinary income. Alexander v. King, supra. The return of the capital is to be secured by the lessor through depletion allowances, not by deduction of cost or value at the date of acquisition. Murphy Oil Co. v. Burnet, 287 U. S. 299, 53 S. Ct. 161, 77 L. Ed. —.

■ The decision of the Board is reversed with instructions to assess the tax deficiency upon only the amounts received as bonus payments for the leases of the surplus allotment, after deducting proper depletion allowances therefrom.