# ELZABURU *v.* CHAVES.

APPEAL FROM THE SUPREME COURT OF PORTO RICO.

No. 52. Submitted November 1, 1915.—Decided November 29, 1915.

The former practice in regard to appeals from the Supreme Court of Porto Rico provided by § 35 of the Foraker Act of 1900, was superseded by § 244, Jud. Code, subjecting appeals from that court to the same regulations as appeals from the District Courts of the United States thus extending the review of this court to include questions of fact, and § 244 has been repealed by section three of the act of January 28, 1915, with a reservation of cases then pending in this court.

In this case the record discloses no sufficient ground for reversing the court below on questions of fact.

The courts of Porto Rico having held, prior to the decision in this case,

that a judgment in a proceeding under § 395 of the Mortgage Law to establish title was not *res judicata* as between the party instituting the proceeding and a party opposing it, and having also held that § 395 had not been repealed either directly or by implication, *held* that such prior decisions had stood so long unchallenged as to have become a rule of property and should not now be overruled.

A party defeated in a statutory possessory proceeding in an inferior court, which a higher court has already held not to be a proceeding in which the judgment is *res judicata*, may rely upon such decision and refrain from appealing from such adverse judgment and bring suit in the courts to set it aside.

19 Porto Rico, 162, affirmed.

THE facts, which involve the title to land in, and the construction of the Mortgage Law of, Porto Rico, are stated in the opinion.

*Mr. J. Texidor* for appellant.

There was no appearance, nor was any brief filed, for the appellee.

MR. JUSTICE PITNEY delivered the opinion of the court.

This suit was commenced by the present appellant in the District Court of San Juan to set aside as null and void certain possessory proceedings instituted by Paula Chaves in the year 1895 with respect to an estate containing 50 cueraas of land, situate at a place known as Honduras, in the ward of Sabana Llana, in the Municipality of Rio Piedras, Porto Rico, and the resulting entry of possession in the Registry of Property of San Juan, and to require the defendants (the present appellees), who are children and heirs of Paula Chaves, to vacate the property and deliver up possession to the plaintiff as the lawful owner. The District Court rendered judgment in his favor; but the Supreme Court of Porto Rico reversed this judgment and

dismissed the complaint. 19 P. R. Sup. Ct. 162. The present appeal was taken under § 244, Jud. Code (Act of March 3, 1911, 36 Stat. 1087, 1157, c. 231), it appearing that the estate in question exceeds five thousand dollars in value.

The transcript contains, in addition to the evidence, a "statement of facts in the nature of a special verdict," made up for the purposes of the present appeal in the manner contemplated by § 35 of the Foraker Act (of April 12, 1900, ch. 191, 31 Stat. 77, 85). See *Rosaly* v. *Graham*, 227 U. S. 584, 589; *Ochoa* v. *Hernandez*, 230 U. S. 139, 143. But that practice was superseded by § 244, Jud. Code, which subjected appeals taken from the Supreme Court of Porto Rico to the same regulations as appeals from the District Courts of the United States, thus extending our review so as to include questions of fact.[1]

Plaintiff asserted that the 50 cuerdas were part of a tract of 112 cuerdas, and this in turn part of a tract containing between 140 and 150 cuerdas formerly owned by Alonso Hernandez, who acquired it in the year 1854; that Hernandez hypothecated this property to the Spanish Government as security for the faithful performance of his duties as collector of internal revenue; that because of an embezzlement of public funds by him the property was seized by the Government in the year 1875; that about 20 years later, on June 5, 1895, it took possession of the land, and on September 14, in that year, possession was recorded in the Registry in favor of the Government, without prejudice to third parties who might have a better title; and that on October 15, 1897, the tract of 112 cuerdas was sold at auction to one Cuadrado, who transferred his right to plaintiff, and thereafter, by deed of

---

[1] Section 244, Judicial Code, was repealed by section three of the Act of January 28, 1915, 38 Stat. 803, 804, ch. 22, but with a reservation of cases then pending in this court, as the present case was.

October 17, 1898, the proper public official conveyed the
land to plaintiff. As to the source of the title of Hernan-
dez, plaintiff claims' to have shown by evidence that
prior to the year 1819 the whole tract was inherited by
Eugenia de la Cruz and her brother, José, from their
grandparents, and the brother conveyed his share to the
sister; that in that year Eugenia sold the land without deed
to Juana Maria de Otero; and that after the death of
Eugenia, and in the year 1836, her son and testamentary
executor instituted proceedings to prove the inheritance
of the estate by his mother and the sale of it to Mrs.
Otero. In these proceedings, which were in evidence,
several witnesses testified that Eugenia de la Cruz was
the owner of the property then in question for many
years prior to the sale of it to Mrs. Otero in 1819, but
agreed in saying that at the time of testifying and for
some years before one Juan Caneti was in possession of it
under some title unknown to them. The testimony hav-
ing been forwarded to the court of San Juan, it was
ordered that the owners of the adjacent properties and the
Sindico Procurador be heard. The property owners
waived hearing. It does not appear that Caneti was
either summoned or heard. The Sindico made no objec-
tion to approving the investigation, "for although the
witnesses say that said property is possessed by Juan
Caneti, this does not annul the ownership had by Eugenia,
and Juana may have leased or sold it to Caneti." The
investigation was thereupon approved by the court.
Hernandez' title was derived in the year 1854 under a
public deed made by a brother and four sisters named
Otero, in their own name and for two other brothers
named, for "an estate in the barrio of Honduras, Rio
Piedras, which is bounded by lands belonging to the
Marchioness de Leon and to José de la Cruz, and is com-
posed of 140 or 150 cuerdas, the exact number of which
will be stated in the deed to be executed for the purpose,

as well as the demarcation thereof, when the same is surveyed."

Defendants (the present appellees) alleged that Juan Caneti was the true owner at least of the tract of 50 cuerdas now in dispute; that from him it passed to his son, Santos Caneti, who in the year 1867 sold it on instalments to Ramon Clemente, the husband of Paula Chaves, from whom it descended to Paula and the defendants, who are her lawful children by Clemente. There was substantial evidence tending to support these allegations. It was also shown quite clearly that Paula Chaves was in continuous possession from the year 1875 until her death in 1899, after which event defendants held continuous possession down to the time of the suit. In the year 1895 Paula instituted proceedings for the recording of her possession, in which the adjoining owners were summoned, testimony was taken, and the proceedings were approved November 7, 1895, and recorded in the Registry of Property in the month of March following.

The Supreme Court of Porto Rico treated the present suit as partaking of the character of an action of ejectment to such extent that it devolved upon plaintiff at the outset to prove that he was the lawful owner of the lands claimed by and in the possession of defendants. The court reviewed the evidence, found that plaintiff's chain of title did not clearly identify the location or boundaries of the land claimed by him, that the evidence of Hernandez' title was dubious, and, while the tract of 50 cuerdas was clearly comprised within the boundaries which the Spanish Government fixed for the properties sold by it to plaintiff, there was so much doubt respecting the question of ownership as to render it impossible to reach the conclusion that plaintiff had proved his title. It was pointed out that in the proceedings instituted in 1836 no description of the property was given, that the witnesses then examined failed to establish the possession of Mrs. Otero, but did

refer to the fact of possession by Juan Caneti, who was neither summoned nor heard; that it was not established in what manner the Oteros who made the deed of sale in 1854 to Hernandez were connected with Mrs. Otero named in the proceedings of 1836; that it was not shown how the seizure of the property by the Spanish Government in 1875 was carried into effect, or the quantity or location of the property seized; that there was no record of the details connected with the act of taking possession of the 112 cuerdas by the Mayor of Rio Piedras in behalf of the Government on June 5, 1895, as alleged by plaintiff, but that even if those 112 cuerdas included the 50 cuerdas in controversy it appeared that Paula Chaves, who at that time was in possession of the 50 cuerdas, not only remained in possession, but for the purposes of the possessory title proceedings, brought by her later in the same year, obtained a certificate from the Mayor, the Secretary, and the Sindico of the Municipality of Rio Piedras stating that according to the records in the municipal archives she was in possession under title of ownership; and that from the whole of the evidence it appeared that the Canetis had held continuous possession in early times, and the Chaves family at least from 1875.

Our examination of the record discloses no sufficient ground for reversing the Supreme Court of Porto Rico upon the questions of fact.

The chief reliance of appellant is upon certain questions of law, the first insistence being that the court erred in denying the force and effect of *res judicata* to a decision rendered by the District Court of San Juan May 31, 1907, in a former action between the present parties. It appears that defendants, as heirs of Paula Chaves, instituted a proceeding in the municipal court of San Juan for the purpose of converting the entry of possession of the 50 cuerdas previously made in her favor into a dominion title; that plaintiff opposed the conversion, upon the trial

decision was rendered in his favor, and on appeal the District Court of San Juan declared that the 50 cuerdas were not in possession of defendants but were part of the estate of 112 cuerdas belonging to plaintiff, that he was in lawful possession, and that the heirs of Chaves had no right to convert their recorded possession into a dominion title.

The Supreme Court held that this decision was not *res judicata.* Appellant cites, to the contrary, § 188 of the local Code of Civil Procedure (Comp. Stat. P. R., § 5172), which declares that "A judgment is a final determination of the rights of the parties in an action or proceeding," and §§ 59 and 101 of the Law of Evidence (Comp. Stat. P. R., §§ 1427, 1469), which are to the effect that, as to parties notified, "a judgment or final order in an action or special proceeding" is conclusive.[1]

---

[1] (1427) Sec. 59. The effect of a judgment or final order in an action or special proceeding before a court or judge of Porto Rico . . . having jurisdiction to pronounce the judgment or order, is as follows:

1. In case of a judgment or order against a specific thing, or in respect to the probate of a will, or the administration of the estate of a decedent, or in respect to the personal, political, or legal condition or relation of a particular person, the judgment or order is conclusive upon the title to the thing, the will, or administration, or the condition or relation of the person;

2. In other cases the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding.

(1428) Sec. 60. Other judicial orders of a court or judge of Porto Rico . . . create a disputable presumption, according to the matter directly determined, between the same parties and their representatives and successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity. . . .

\*     \*     \*     \*.     \*     \*     \*     \*

The question is, whether the decision of May 31, 1907, was "a judgment or final order in an action or special proceeding" within the meaning of the sections cited. The proceeding was instituted under Article 395 of the Mortgage Law (Comp. Stat. P. R., p. 1108), which enables an owner of property having no written title to record his ownership upon proving it before the judge of the court of first instance, or municipal court, under prescribed formalities. Notice is given to the person from whom the property may have been acquired, or his predecessor in interest, and to the representative of the department of public prosecution. The judge is to "receive written pleadings upon the claims and evidence which may have been presented by the representative of the department of public prosecution or by the other persons who may have attended the proceedings," and in view of their allegations he is to decide upon the evidence and declare whether the ownership of the property involved has been established; any person interested may appeal from this decision; and "if said decision is accepted or affirmed, it shall constitute a sufficient title for the record of the ownership."

There seems to be no question that such a decision, as the law stood at the time of the annexation of the Island to the United States, was not conclusive upon the question of ownership, even as between the parties participating in the proceeding, but was subject to be set aside in an ordinary action.

By Article 413 of the Mortgage Law it was declared: "None of the articles of which this law consists can be repealed except by virtue of another special law." And by § 8 of the Foraker Act of April 12, 1900, c. 191, 31 Stat.

(1469) Sec. 101. The following presumptions, and no others, are deemed conclusive:

＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊

6. The judgment or order of ι court, when declared by this code to be conclusive; . . .

77, 79, the law was continued in force until amended or repealed by the legislative assembly or by Act of Congress. The Code of Civil Procedure was enacted by the legislative assembly March 10, 1904. The Law of Evidence was enacted March 9, 1905. As already shown, it refers to "actions and special proceedings." Upon the same day another act was approved, entitled "An Act relating to special legal proceedings." (Comp. Stat. P. R., p. 300.) It contains provisions for the recording of public instruments and wills, for declaration of heirship, administration of decedents' estates, appointment of guardians, the care of the persons and properties of minors, and other matters; and in its final section there is this declaration: "All previous laws in conflict herewith are hereby repealed; but the special proceedings established in the Civil Code, in the mortgage law and its regulations, and in any other law, in so far as not provided for by this act, remain in force."

The effect of these subsequent enactments upon the special proceedings established in the Mortgage Law and Regulations was considered by the Supreme Court of Porto Rico in *Giménez* v. *Brenes* (1906), 10 P. R. Sup. Ct. 124, 131, 133, etc., and again in *Gonzales* v. *The People* (1906), 10 P. R. Sup. Ct. 458, 462. In the former case it was held, with respect to summary proceedings for the collection of a mortgage debt under Article 128, in the latter with respect to a special proceeding under Article 395, that the provisions of the Mortgage Law remained in force notwithstanding the Code of Civil Procedure, and in the latter case it was distinctly held that the proceedings to establish ownership did not produce the effect of *res judicata.* This was reaffirmed by the same court, in *Calderon* v. *Garcia* (1908), 14 P. R. Sup. Ct. 407, 416. And see *Ochoa* v. *Hernandez*, 230 U. S. 139, 151. These decisions of the Supreme Court of Porto Rico are based upon reasoning that, while conceding the full authority

. of the legislative assembly to repeal or modify the Mort-
gage Law, in effect invokes Article 413 of that law (con-
tinued in force as a part of it by the Foraker Act) as pre-
scribing a rule of interpretation to be applied in testing the.
intention of the law-making body as expressed in subse-
quent enactments.  No express repeal of Article 395 of
the Mortgage Law being found, and the question being
one of implied repeal, the court deemed it manifest that
the. legislative assembly, in adopting the Code of Civil
Procedure and the Law of Evidence, did so with full knowl-
edge of Article 413 of the Mortgage Law, and therefore
intended no implied repeal.  And the Law of Evidence
having been enacted contemporaneously with the Act
Relating to Special Proceedings, the latter act was looked
to in construing § 59 of the former, and the express reser-
vation of the special proceedings established in the Mort-
gage Law and its Regulations was treated as showing that
they were to be left in existence with their former force
and effect, and no greater.  This view, to say the least, is
a reasonable one; and since it is plain that the decisions,
having stood so long unchallenged, have established a rule
of property, it seems to us that they ought not now to be
overruled.  It is worthy of remark that *Gonzales* v. *The
People, supra,* was decided more than a full year before
the decision of the District Court of San Juan which
appellant insists ought to be treated as conclusive.  De-
fendants may well have refrained from taking an appeal
from the decision of the District Court in reliance upon
the previous decision of the higher tribunal that it had no
conclusive effect.

The remaining questions of law raised by appellant re-
solve themselves, upon analysis, into a mere criticism of the
process of reasoning by which the court reached its conclu-
sions upon the facts.  We find them without substantial
merit, so far as their effect upon the result is concerned.

*Judgment affirmed.*