**DUNN et al. v. MICCO et al.**

No. 1852.

Circuit Court of Appeals, Tenth Circuit.

Aug. 17, 1939.

Writ of Certiorari Denied Dec. 11, 1939.

See 60 S.Ct. 296, 84 L.Ed. ——.

Charles B. Rogers, of Tulsa, Okl. (Wm. Gulager, of Muskogee, Okl., on the brief), for appellants.

Frank Settle and Sam Clammer, both of Tulsa, Okl., for appellees.

James E. Goodrich, of Kansas City, Mo., for Commerce Trust Co.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an appeal from a judgment dismissing the bill in a suit brought by Harry Dunn, Noah Dunn, and Ralph Dunn against Peter Micco, Hettie Micco, guardian ad litem of Peter Micco, an incompetent, Wallace Cook, and Commerce Trust Company of Kansas City, Missouri.

The amended bill of complaint alleged that Silla Micco, nee Pierce, an enrolled full-blood Creek Indian died January 9, 1933, seized and possessed of certain lands and moneys derived therefrom; that such lands consisted of Creek allotments made to her, Sallie Pierce, her mother, and Jacob Pierce, her father; that Sallie and Jacob were enrolled full-blood Creek citizens; that Silla died without issue, without father or mother, brother or sister living, and without living issue of any deceased brother or sister; that plaintiffs are the next of kin and sole legal heirs of Silla; that Peter Micco is of Seminole Indian blood, an enrolled member of the Seminole Tribe, a Seminole allottee, and a noncitizen of the Creek Nation; that Peter claims to have inherited such lands and moneys as the surviving husband of Silla; that Wallace Cook and the Commerce Trust Company are in possession of such lands and moneys under an alleged trust agreement purporting to have been executed by Peter. The bill prayed for recovery of possession of the lands and moneys and for an accounting. The court sustained de-

fendants' motions to dismiss the bill. Plaintiffs elected not to plead further and judgment was entered dismissing the bill and awarding defendants costs.

Section 6 of the Supplemental Creek Agreement, 32 Stat. 500, 501, reads as follows:

"The provisions of the act of Congress approved March 1, 1901 (31 Stat.L. 861), in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed and the descent and distribution of land and money provided for by said act shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas now in force in Indian Territory: Provided, That only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation: And provided further, That if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the order named in said chapter 49."

Section 13 of the Oklahoma Enabling Act, 34 Stat. 267, 275, in part provided:

"That the laws in force in the Territory of Oklahoma, as far as applicable, shall extend over and apply to said State until changed by the legislature thereof."

Section 21 of the Enabling Act, 34 Stat. 267, 277, in part provided:

"All laws in force in the Territory of Oklahoma at the time of the admission of said State into the Union shall be in force throughout said State, except as modified or changed by this Act or by the constitution of the State, * * *."

Section 2 of the Schedule to the Oklahoma Constitution, Okl.St.Ann., in part provides:

"All laws in force in the Territory of Oklahoma at the time of the admission of the State into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the State of Oklahoma until they expire by their own limitation or are altered or repealed by law."

Oklahoma was admitted as a state on November 16, 1907, 35 Stat. 2160.

The second proviso of Section 9 of the Act of May 27, 1908, 35 Stat. 312, 315, after providing for special estates for issue born after March 4, 1906, provided that if such issue should die before April 26, 1931, "the land" should "then descend to the heirs, according to the laws of descent and distribution of the State of Oklahoma, free from all restrictions."

Counsel for plaintiffs contend that the provisions of the Enabling Act and Section 9 of the Act of May 27, 1908, did not effect a repeal of the first proviso to Section 6 of the Supplemental Creek Agreement, and that, therefore, Peter, the husband, not being a Creek citizen, did not inherit from his deceased wife, Silla. This view was sustained in five decisions of the Oklahoma Supreme Court handed down between February 8, 1916, and February 24, 1920.[1] But in Re Pigeon's Estate, 81 Okl. 180, 198 P. 309, decided May 17, 1921, the Supreme Court of Oklahoma expressly overruled its prior decisions and held that the first proviso of Section 6, supra, was repealed by the provisions of the Enabling Act above adverted to and Section 9 of the Act of May 27, 1908. The decision in Re Pigeon's Estate, supra, has been consistently followed in subsequent Oklahoma decisions.[2]

Coker v. Howard, 122 Okl. 12, 250 P. 130, and Campbell v. Wadsworth, 248 U. S. 169, 39 S.Ct. 63, 63 L.Ed. 192, are not to the contrary. In those cases the decedent died and the descent was cast prior to statehood.

In the case of Tiger v. Slinker, D.C. Okl., 4 F.2d 714, decided March 19, 1925, Judge Williams held that the first proviso in Section 6 of the Supplemental Creek

[1] Scott v. Ryal, 78 Okl. 12, 186 P. 206;

Jefferson v. Cook, 53 Okl. 272, 155 P. 852;

Hughes v. Bell, 55 Okl. 555, 155 P. 604;

Thompson v. Cornelius, 53 Okl. 85, 155 P. 602;

Privett v. Rentie, 75 Okl. 191, 182 P. 898.

[2] Teague v. Smith, 85 Okl. 12, 204 P. 439;

Harrison v. Harrison, 87 Okl. 91, 209 P. 737;

Murray v. Goad, 88 Okl. 300, 213 P. 73;

Graves v. Jacobs, 92 Okl. 62, 217 P. 871;

McKay v. Roe, 96 Okl. 87, 219 P. 921.

Agreement was repealed by the provisions of the Enabling Act and Section 9 of the Act of May 27, 1908. This case was affirmed by the Eighth Circuit in the case of United States v. Tiger, 19 F.2d 35, decided April 4, 1927.

■ The decisions of the Supreme Court of Oklahoma and of the inferior federal courts in the Tiger case have established a rule of property. Important property rights have been purchased, held, and disposed of on the faith of that rule.

■ A rule established by judicial decisions construing statutes regulating the descent and distribution of land is a rule of property.[3] The rule stare decisis applies with peculiar force and strictness to decisions which have established a rule of property. Such rules should be certain and stable[4] and when once established should not be disturbed, even though a different conclusion might be reached if the question were an open one. The reasons are obvious. Property is acquired and sold in reliance on such rules. Legislative changes operate prospectively; judicial decisions are retrospective. A departure from an established rule of property may destroy important rights or titles acquired on the faith thereof. Men may adapt themselves to rules lacking in technical correctness, but shifting rules afford them neither protection nor safety.[5]

In United States v. Title Ins. Co., 265 U.S. 472, 486, 44 S.Ct. 621, 623, 68 L.Ed. 1110, the court quoted with approval from Minnesota Min. Co. v. National Min. Co., 3 Wall. 332, 334, 18 L.Ed. 42, as follows:

"Where questions arise which affect titles to land, it is of great importance to the public that, when they are once decided, they should no longer be considered open. Such decisions become rules of property, and many titles may be injuriously affected by their change. Legislatures may alter or change their laws, without injury, as they affect the future only; but where courts vacillate, and overrule their own decisions on the construction of statutes affecting the title to real property, their decisions are retrospective, and may affect titles purchased on the faith of their stability. Doubtful questions on subjects of this nature, when once decided, should be considered no longer doubtful or subject to change."

■ Furthermore, the Congress, by the proviso to Section 9 of the Act of May 27, 1908, recognized and treated "the laws of descent and distribution of the State of Oklahoma" as applicable to lands allotted to members of the Five Civilized Tribes. See Jefferson v. Fink, 247 U.S. 288, 293, 294, 38 S.Ct. 516, 62 L.Ed. 1117.

■ The plaintiffs acquired no vested right under the provisions of the Supplemental Creek Agreement dealing with the devolution of property. Those provisions were legislative and not contractual. Like other rules of descent, they were subject to change by the law-making power as to any land not already passed to the heir by the death of the owner. Not until the ancestor dies is there any vested right in the heir. Jefferson v. Fink, supra, 247 U. S. page 294, 38 S.Ct. 516, 62 L.Ed. 1117.

The judgment is affirmed.

---

[3] McDougal v. McKay, 237 U.S. 372, 384, 35 S.Ct. 605, 59 L.Ed. 1001;

Herring v. Elliott, 218 Ala. 203, 118 So. 391, 392;

Bucher v. Cheshire R. Co., 125 U.S. 555, 583, 8 S.Ct. 974, 31 L.Ed. 795;

Kuhn v. Fairmont Coal Co., C.C.W.Va., 152 F. 1013, 1015.

[4] Layton Pure Food Co. v. Church & Dwight Co., 8 Cir., 182 F. 35, 39, 32 L. R.A.,N.S., 274;

Germania Iron Co. v. James, 8 Cir., 89 F. 811;

Welch v. First Trust & Savings Bank, 8 Cir., 15 F.2d 184, 187;

Rock Spring Co. v. Gaines & Co., 246 U.S. 312, 320, 38 S.Ct. 327, 62 L.Ed. 738.

[5] United States v. Title Ins. Co., 265 U.S. 472, 486, 44 S.Ct. 621, 68 L.Ed. 1110;

McDougal v. McKay, supra;

Truskett v. Closser, 236 U.S. 223, 229, 35 S.Ct. 385, 59 L.Ed. 549;

Minnesota Min. Co. v. National Min. Co., 3 Wall. 332, 334, 18 L.Ed. 42;

De Elzaburu v. Chaves, 239 U.S. 283, 292, 36 S.Ct. 47, 60 L.Ed. 290;

Weston v. Poland, 10 Cir., 48 F.2d 738, 740;

Lasiter v. Ferguson, 79 Okl. 200, 192 P. 197;

Wisconsin Power & Light Co. v. City of Beloit, 215 Wis. 439, 254 N.W. 119, 122.