**JONES, Collector of Internal Revenue v. TAUNAH et al.**

**No. 4109.**

United States Court of Appeals
Tenth Circuit.

Jan. 2, 1951.

Phillips, Chief Judge, dissented in part.

Helen Goodner, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, J. W. Hussey, Special Assts. to the Atty. Gen. and Robert E. Shelton, U. S. Atty., Oklahoma City, Okl., on the brief), for appellant.

Houston Bus Hill, Oklahoma City, Okl. (Richard H. Godfrey, Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

This case presents for determination the question whether income derived from restricted allotted lands in Oklahoma belonging to full-blood restricted Comanche Indians is subject to federal income tax.

Bert Taunah and Peawifeah Taunah, hereinafter referred to as the taxpayers, are full-blood restricted Comanche Indians. Bert owned certain restricted land in Oklahoma, some of which was originally allotted to him and some of which he inherited. In like manner, Peawifeah owned other restricted land in that state, some of which was originally allotted to her and some of which she inherited. The lands were allotted to or inherited by the taxpayers under the provisions of the General Allotment Act of 1887, 24 Stat. 388, 25 U.S. C.A. § 331 et seq., and the so-called Jerome Agreement of 1892 which was ratified by Congress, effective June 6, 1900, 31 Stat. 676. During the year 1946, the taxpayers received income, some from oil lease bonus, some from oil and gas rentals and royalties, and some from agricultural leases or agricultural activities, on such lands. All of the

446

income was paid into the Indian Agency at Anadarko, Oklahoma. An employee of the government at the Agency prepared an income tax return for the taxpayers. The income derived from the restricted lands was included in the return. The tax payable under the return was deducted from the accounts of the taxpayers with the Treasurer of the United States and credited to the account of the Collector for the District of Oklahoma. The taxpayers filed a claim for the refund of the tax paid in that manner. No action was taken on the claim within six months after its filing, and the taxpayers then instituted this suit against the Collector to recover the amount of the tax, with interest from the date of payment. Judgment was entered for the taxpayers, and the Collector appealed.

■ Section 11 of the Internal Revenue Code in effect in 1946, 26 U.S.C.A. § 11, provides for the exaction of a normal income tax upon the net income of every individual. Section 21 defines net income as gross income computed under section 22, less the deductions allowed by section 23. Section 22(a) defines gross income to include gains, profits, and income derived from any source. And section 23 authorizes deductions from gross income in arriving at net income. Standing alone and without more, these general statutory provisions are broad enough to include income derived from lands allotted to Indians and restricted against alienation. Choteau v. Burnet, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353; Superintendent of Five Civilized Tribes v. Commissioner, 295 U.S. 418, 55 S.Ct. 820, 79 L.Ed. 1517. And it has been held without deviation that exemptions from federal taxation do not rest upon implication. Unless expressly granted in plain terms, they do not exist. The Cherokee Tobacco, 11 Wall. 616, 620, 20 L.Ed. 227; United States Trust Co. v. Helvering, 307 U.S. 57, 59 S.Ct. 692, 83 L.Ed. 1104; Oklahoma Tax Commission v. United States, 319 U.S. 598, 63 S.Ct. 1284, 87 L.Ed. 1612.

■ It was the view of the trial court— and the taxpayers advance the contention in support of the judgment—that under section 5 of the General Allotment Act, supra, and article V of the duly ratified Jerome Agreement, supra, the lands allotted to the taxpayers and those inherited by them, as well as the income derived from such lands, were exempt from all taxes. Section 5 of the General Allotment Act provides in presently pertinent part that when allotments have been made and approved patents therefor shall issue which shall be of the legal effect and declare that the United States does and will hold the land for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom the allotment shall have been made, or in case of his death, of his heirs; and that at the expiration of such period the title in fee shall be conveyed, discharged of the trust and free of all charge or incumbrance whatsoever. It further provides that the President may in any case in his discretion extend the period of restrictions. And by executive orders the restrictions upon the lands of the taxpayers were extended and were still in effect in 1946. Article V of the ratified Jerome Agreement provides that when allotments have been made, the titles thereto shall be held in trust for the allottees, respectively for the period of twenty-five years, in the time and manner and to the extent provided in the General Allotment Act; and that at the expiration of the period of twenty-five years, the titles shall be conveyed in fee simple to the allottees or their heirs, free of all incumbrances. Restrictions upon alienation of allotted lands were thus provided in clear language. But the statute and the agreement will be searched in vain for a provision expressly exempting such lands from taxation by the United States. And it is settled law that restrictions upon alienation and non-taxability under federal law are not necessarily synonymous. They are separate and distinct things. Superintendent of Five Civilized Tribes v. Commissioner, supra; Oklahoma Tax Commissioner v. United States, supra.

■ In addition to providing in effect that the allotted lands shall be inalienable during the trust period, the General Allotment Act and the ratified Jerome Agreement provide in substance that at the end of the trust period the fee title shall be conveyed to the allottee, or in the event of his

death to his heirs, free of all incumbrances. During the trust period, lands allotted under these provisions of law cannot be burdened with ad valorem taxes imposed under state law. United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; Morrow v. United States, 8 Cir., 243 F. 854; United States v. Nez Perce County, Idaho, 9 Cir., 95 F.2d 232; Glacier County, Mont. v. United States, 9 Cir., 99 F.2d 733; Board of Commissioners v. United States, 10 Cir., 100 F.2d 929, modified 308 U.S. 343, 60 S. Ct. 285, 84 L.Ed. 313.

But this case does not involve an assessment for ad valorem taxes under state law upon allotted lands during the trust period. It concerns itself with income taxes under federal law upon income derived from allotted lands. While no case has been called to our attention determining the precise question whether income of that kind is exempt from income tax, certain land-mark cases seem to chart our course. In Choteau v. Burnet, supra, the taxpayer was an enrolled member of the Osage tribe of Indians, to whom a certificate of competency had been issued. He owned his allotment of tribal lands and he inherited from a deceased member a one-half interest in the latter's allotment, but nothing in the case turned on his ownership of those lands. He also owned his original share in the tribal revenues; and, by inheritance from a deceased member, he owned one-half of the interest which the decedent would have been entitled to if living. The question was whether the income derived from his shares in the tribal income from oil and gas leases was subject to income tax. The leases were on a portion of the lands purchased by the United States with money belonging to the tribe, held in trust for the tribe, and subsequently allotted to members of the tribe as directed by law. But in the allotment of the lands the mineral rights were expressly reserved to the tribe, and the income was to be placed in the Treasury of the United States to the credit of the members of the tribe and distributed among them quarterly. The court said in substance that while it had been held that royalties received by the government from mineral leases of Indian lands were beyond the taxing power of the state on the ground that during the time they were in the possession of the United States they were a federal instrumentality to be used to carry out a governmental policy, it did not follow that they could not be subjected to a federal tax; that the intent to exclude income of that kind from income tax must be definitely expressed, otherwise it is not exempt; that there was nothing in the nature of the income in question which excepted it from the effect of the applicable Revenue Act; and that the income was subject to tax. In Superintendent of Five Civilized Tribes v. Commissioner, supra, the taxpayer was a full-blood Creek Indian. Certain funds derived from his restricted allotment of land were invested and the proceeds therefrom were collected and held in trust under the direction of the Secretary of the Interior. Although the land from which the income came was restricted against alienation, the court said that it found nothing in any applicable statute which expressed a definite intent to exclude from tax income such as that involved; and that taxation of income from trust funds of an Indian ward was not so inconsistent with that relationship that exemption was a necessary implication. In Oklahoma Tax Commission v. United States, supra, the question was whether statutes of Oklahoma imposing inheritance taxes reached the estates of members of the Five Civilized Tribes of Indians in that State. The restricted properties of which the estates were composed fell into four main categories. They were land exempt from direct taxation, land not exempt from direct taxation, cash and securities held for the Indians by the Secretary of the Interior, and miscellaneous personal properties and insurance. The court said that the transfer of lands which Congress by explicit command exempted from direct taxation was also exempted from estate taxes. But in respect to the other restricted properties the court said that restriction against alienation was not the equivalent of a Congressional grant of immunity from estate tax imposed under state law; that if Congress intended to prevent the state from levying a general non-discriminatory estate tax applicable alike

to Indians and all other citizens, it should say so in plain words; and that in the absence of an explicit provision of non-taxability, exemption of restricted properties of Indians from estate taxes did not exist. In Landman v. Commissioner, 10 Cir., 123 F.2d 787, certiorari denied 315 U.S. 810, 62 S.Ct. 799, 86 L.Ed. 1209, a full-blood restricted Creek Indian died seized of a restricted allotment of land, certain bonds representing invested proceeds derived from the production of oil and gas from the allotted land, and certain cash derived from the same source. The cash and the bonds were under the supervision and control of the Secretary of the Interior. Upon the death of the decedent, the estate passed to her heirs who likewise were restricted Indians, and the transfer of the personal property was affected by the simple expedient of bookkeeping entries in the records of the Treasury of the United States and of the Superintendent of the Five Civilized Tribes. Stressing the distinction between restrictions against alienation and exemption from taxation under federal law, it was held that even though the property was restricted the estate was liable for estate tax. And that case was cited with obvious approval in Oklahoma Tax Commission v. United States, supra. Viewed in the light of these cases, we think it is fairly clear that until Congress shall explicitly provide otherwise income of a kind in question is not exempt from income tax under federal law.

The judgment is reversed and the cause remanded with direction to dismiss the action.

PHILLIPS, Chief Judge (dissenting in part).

Bert Taunah and Peawifeah Taunah brought this action against Jones to recover certain Federal income taxes paid by them for the year 1946. Both of the Taunahs are full-blood, restricted Comanche Indians. Bert owns an individual allotment and other allotted lands which came to him by inheritance. Peawifeah owns an individual allotment and other allotted lands which came to her by inheritance. Trust patents for the original allotments and inherited allotments were issued under the General Allotment Act of 1887. The trust period has been extended and has not expired.

During the year 1946, Peawifeah received agricultural and interest income amounting to $195.56 and oil and gas royalty income amounting to $25,239.99. All except $22.46 of the latter amount came from her original allotment.

During the year 1946, Bert Taunah received $345 agricultural lease income, $360 oil and gas royalty income, $100 oil lease bonus, or advanced royalty, and .40 interest, making a total income of $805.40.

The income of Peawifeah and Bert Taunah from all sources, after deductions, aggregated $19,200.95. It was divided equally between them for income tax purposes. An income tax return for the year 1946 was prepared and filed for them by the Kiowa Indian Agency at Anadarko, Oklahoma. The tax payable, as shown by the return, was charged against the individual accounts of Peawifeah and Bert, on deposit with the Treasurer of the United States, and under the supervision and control of the Secretary of the Interior, and was credited to the account of the Collector for the District of Oklahoma.

Under the agreement of October 21, 1892, entered into by the United States and the Comanche, Kiowa and Apache tribes of Indians, the residue of the reservation of such Indians remaining after the selection of 160-acre allotments by each member of the three tribes, and the setting apart of 480,000 acres of grazing lands for use in common by the three tribes, was ceded and relinquished to the United States. The agreement was approved by Congress on June 6, 1900, 31 Stat. 676, 681.

The agreement provided that the allotted lands should be held in trust for the period of 25 years, and at the expiration of such period should be "conveyed in fee simple to the allottees or their heirs, free from all incumbrances." The allotments were made under the General Allotment Act, 24 Stat. 388, 389. The General Allotment Act provided that trust patents should be issued to the allottees, and that the allotments should be held in trust by the United States for a

period of 25 years, and at the end of the trust period should be conveyed to the allotees and their heirs in fee, free of all charges or encumbrance, whatever. Neither the agreement of 1892 or the General Allotment Act provides for any exemption from taxation but the amendment thereto of May 8, 1906, 34 Stat. 182, provided that upon the issuance of the patent in fee simple, " * * * all restrictions as to sale, incumbrance, or taxation of said land shall be removed".

In United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 480, 47 L.Ed. 532, the court held that lands allotted under the General Allotment Act were exempt from state taxation during the trust period. One of the grounds upon which the decision rested is that to tax such lands during the trust period would be to tax an instrumentality of the United States. Another ground was stated by the court, as follows: "So that if they may be taxed, then the obligations which the government has assumed in reference to these Indians may be entirely defeated; for by the act of 1887 the government has agreed at a named time to convey the land to the allottee in fee, discharged of the trust, 'and free of all charge or encumbrances whatsoever.' To say that these lands may be assessed and taxed by the county of Roberts under the authority of the State is to say they may be sold for the taxes, and thus become so burdened that the United States could not discharge its obligations to the Indians without itself paying the taxes imposed from year to year, and therby keeping the lands free from encumbrances."

See also Chouteau v. Commissioner, 10 Cir., 38 F.2d 976.

For income tax purposes all of the proceeds derived from oil and gas is regarded as gross income. But viewed realistically, oil and gas are exhaustible and irreplaceable natural resources. Once withdrawn from land they are gone forever. Ordinarily, when oil and gas is found in land in paying quantities, the oil and gas rights are much more valuable than the surface. Had the United States not permitted the oil and gas to be removed from the original allotments during the trust period, under departmental leases and in consideration of royalties paid to it for the benefit of the allottees, it would have been obligated at the end of the trust period to transfer to each allottee his allotted land in fee simple, free and clear from all charges and encumbrances, including both the surface rights and the oil and gas and other minerals in the land. What it in effect did, acting as trustee for the allottees, was to exchange the oil and gas for cash during the trust period. Its obligation, under the agreement, in my opinion, at the end of the trust period will be to transfer the land and the cash which it received for the oil and gas extracted from the land, undiminished. To do less than that would not be to fulfill either the letter or the spirit of its obligation under the agreement of October 21, 1892.

With respect to the inherited lands, no such obligation exists. The right to take property by descent is a privilege or creature of the law and not a matter of inherent right.[1] The obligation of the United States to convey the original allotment undiminished to the allottees at the end of the trust period could not lawfully be changed. To do so would impair the contract. But the right of the heirs of an allottee to take his allotment is a mere privilege of the law and is subject to change at the will of Congress.[2]

With respect to the income derived by the allottee from oil and gas royalties from his original allotment, the instant case is distinguishable from Oklahoma Tax Commission v. United States, 319 U.S. 598, 63 S.Ct. 1284, 87 L.Ed. 1612. That case dealt with a state inheritance tax and not income tax on royalty received under an oil and gas lease of an original allotment. That tax diminished what an heir received. The tax here on oil and gas royalty from the original allotment will diminish what the original allottee will receive.

1. Hernandez v. Becker, 10 Cir., 54 F.2d 542, 549; Dunn v. Micco, 10 Cir., 106 F. 2d 356, 359.

2. Jefferson v. Fink, 247 U.S. 288, 38 S.Ct. 516, 62 L.Ed. 1117; Dunn v. Micco, supra.

For the reasons indicated I would hold that the royalties derived from leases on the original allotments are not subject to Federal income tax, but that interest earned by investment of royalty funds, agricultural income and royalty income from inherited lands are subject to Federal income tax.